

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

TH:JPM/DEL

March 22, 2022

By ECF and E-mail

The Honorable James R. Cho
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   United States v. Theodore Persico, Jr.
           Criminal Docket No. 21-466 (ARR)

Dear Judge Cho:

      The government respectfully submits this letter in opposition to defendant Theodore Persico, Jr.'s application for pretrial release dated March 14, 2022 ("Def. Motion").[1] See ECF Dkt. No 269. Persico is next in line to lead the Colombo crime family of La Cosa Nostra ("Colombo crime family"), a violent criminal enterprise whose members face charges for a long-running extortion scheme directed toward multiple victims. As shown below, the evidence demonstrates that, consistent with Persico's leadership role in the family, Persico provided direction and supervision to lower-level members who sought to infiltrate and siphon funds from the labor union (the "Labor Union") and its associated health fund (the "Health Fund"). Given these charges, his decades-long association with the crime family, his lengthy criminal history, and his demonstrated inability to successfully complete a single term of Court supervision, Persico's application for release should be denied and the Court should continue the permanent order of detention that has been in place since September 14, 2021.

---

[1]     While the defendant's motion initially requested partial sealing on the basis that some material quoted herein is protected discovery material, the defense provided advance notice to the government of its intent to use this material and the government informed the defense before its filing on March 14, 2021 that the government had no objection to the motion's public unredacted filing, pursuant to the Protective Order dated October 26, 2021, ¶ 9.

I.  Factual Background

   A.  Charges

On September 8, 2021, a grand jury in this district returned a 19-count indictment (the "Indictment") charging fourteen defendants, including eleven members and associates of the Colombo crime family, with labor racketeering, extortion, money laundering conspiracy and other offenses. Persico is charged in Count One of the Indictment with racketeering, in violation of 18 U.S.C. § 1962(c); Count Two with Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a); Count Three with Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a); Count Four with Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a); Count Five with attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a); Count Thirteen with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); Count Fourteen with conspiracy to steal and embezzle health care benefit funds, in violation of 18 U.S.C. §§ 371, 664 and 669(a); Count Fifteen with health care fraud conspiracy, in violation of 18 U.S.C. §§ 1349 and 1347; Count Sixteen with attempted health care fraud, in violation of 18 U.S.C. § 1347; and Count Seventeen with making false statements, in violation of 18 U.S.C. § 1001.

   B.  Initial Arraignment and Detention Order

On September 14, 2021, the defendant was arrested and arraigned before the Honorable Taryn A. Merkl, United States Magistrate Judge. The government sought his detention for the reasons outlined in the detention memorandum (ECF Dkt. No. 20), including that Persico is a captain in the Colombo crime family, with a significant and violent criminal history and a long history of not only failing to comply with conditions of supervision but committing new crimes while on supervision.

At that time, defense counsel proffered that the defendant could offer a $2 million bond secured by at least seven financially responsible suretors and six properties and would agree to home detention. Magistrate Judge Merkl questioned whether this proposed package "would attempt to replicate" a prison-setting, noting "the Second Circuit has looked unfavorably on [this] in cases involving organized crime people who have a high position in the organization." 9/14 Arraignment Transcript at 21:18-21. Judge Merkl noted that the defendant, a high-ranking captain, is alleged to be the next boss of the Colombo crime family and therefore posed a danger because his associates could act on his behalf. She asked: "What is the assurance that Mr. Persico would not — would abide by the conditions of release if he can't abide by probation?" Tr. at 23:16-18. At the hearing, Judge Merkl explained her decision to deny Persico's application for release:

> [A]s you acknowledged at the beginning, at the outset of your remarks, you sort of have a tough row to hoe here given Mr. Persico's lengthy criminal history and the sort of speed with which he seems to get reinvolved in the affairs of the Colombo crime family upon his release. I understand your factual

2

> arguments as to the government's -- I'm not going to say dearth because we don't know what all the evidence is in this case, as you've identified. The evidence as to his involvement in the specific activities of the union could certainly be stronger. That could have been exculpated in the detention memo. But what I do think the detention memo does a good job of showing and what I think [the government] has done a good job of demonstrating is that Mr. Persico does play a leadership role in the Columbo crime family and has been able to return to that role despite periods of incarceration. And because of his status as somebody who was on supervised release while these things were going on, I cannot release him today. I find that he does present a danger to the community and I do find that the government has shown that by clear and convincing evidence.

Tr. at 37:20-38:17.

Persico was released to supervision on May 29, 2020. On September 20, 2021, he was also charged with fifteen violations of supervised release, ten of which were based on the charges in the Indictment and five of which are based on his association with other members of organized crime in November and April 2021. See Case No. 10-CR-00147 (RPK). Persico was also detained on these violations and also moves for pretrial release in that case. Case No. 10-CR-00147 (RPK), ECF Dkt. No 919. Because Persico was on supervised release, he carries the burden of establishing by clear and convincing evidence that he will not flee or pose a danger to any other person or to the community. Fed. R. Crim. Pro. 32.1(a)(6).

C. Persico's Criminal History and Previous Violations of Release

Defense counsel acknowledges that Persico has a "significant criminal history" and was on supervised release during the relevant time period. Def. Motion at 18. However, counsel fails to acknowledge that his criminal history is marked by acts of violence committed during his 30-year association with the Colombo crime family.

Persico's verified criminal history begins at age 17 for a 1981 conviction for attempted grand larceny in in Richmond County Criminal Court. In 1982, he was convicted for receiving stolen property in Hunterdon County District Court, in New Jersey. In 1983, he was convicted for attempted grand larceny in Kings County Supreme Court, and for disorderly conduct in Richmond County Court. In 1987, Persico was convicted by a jury for criminal sale of controlled substances. He initially sentenced to 20 years to life, but was later resentenced to five to 15 years. He was released to parole on April 28, 2004.

Upon release, Persico continued to associate with members of the Colombo crime family. In May 2004, Persico obtained a gun in advance of a meeting with a Colombo soldier, which he discussed having to wipe clean of fingerprints. See Case No. 05-CR-351,

3

ECF Dkt, No. 86 at 4.  In November 2004, he sought to collect an extortionate debt from John Doe #1.  To force John Doe #1 to pay, Persico threatened to give John Doe #1's son a "f---in' beatin,'" and stated that he would "take it out on [John Doe #1's] kids, that's all, until he f---in' does the right thing."  Id. at 2.  Persico personally visited John Doe #1's business twice.  In 2005, Persico was arrested and detained pending trial.  Later that year, he pleaded guilty to racketeering in connection with his membership in and association with Colombo crime family between April 2004 and April 2005, for acts extortionate collection of credit and attempted extortion.  He was sentenced to 42 months' imprisonment and three years' supervised release.

Persico commenced his next term of supervision on June 4, 2008.  Less than two years later, on March 9, 2010, Persico was arrested for racketeering conspiracy and wire fraud conspiracy while on supervised release.  See Case No. 10-CR-147.  He was detained pending trial.  During his pretrial detention, on April 26, 2011, the Probation Department issued a Violation report charging that between June 4, 2008 (the date of his release) and March 9, 2010, Persico engaged in a racketeering conspiracy, a wire fraud conspiracy, extortion and extortion conspiracy, all while acting in his capacity as a captain in the Colombo family.

On June 8, 2012, the defendant waived indictment and pleaded guilty to conspiracy to commit the October 1993 murder-in-aid-of-racketeering of Joseph Scopo.  See Case No. 10-CR-147, ECF Dkt. No. 561-63.  The government's sentencing letter and the Presentence Investigation Report noted that in August 1993, Persico was briefly furloughed from state prison to attend his grandmother's wake.  See Case No. 10-CR-147, ECF Dkt. No 739, at 3.  During that furlough, he ordered members of his crew to kill Scopo, a member of a rival faction of the Colombo crime family.  Scopo was shot and killed in front of his home in Queens as he was returning from dinner with his nephew and future son-in-law.  Persico was ultimately sentenced to 120 months' imprisonment on the murder conspiracy charge, a consecutive sentence of 24 months' imprisonment on the violations of supervised release, and a term of three years' supervised release.  He was released to the current term of supervision in May 2020.

D. Persico's High-Ranking Position in the Colombo Crime Family[2]

The government's investigation has shown that Persico is slated to be the next boss of the Colombo crime family.  Witness testimony will establish that at a high-level meeting of the crime family in November 2020, members of the Colombo family determined that co-defendant Andrew Russo would serve as the family's boss and Persico would become the boss upon completion of his supervised release.

---

[2] The government is entitled to proceed by proffer in a detention hearing. United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

4

Consensual recordings made by a co-conspirator ("CC#1") also reflect Persico's position of power and ability to direct even the underboss Benjamin Castellazzo. For example, on April 13, 2021, at approximately 12:05 p.m., Co-Conspirator #1 drove co-defendant Vincent Ricciardo to meet with senior members of the Colombo crime family at a garage located in Gravesend section of Brooklyn. After the meeting, Vincent Ricciardo told Co-Conspirator #1 that Castellazzo, the underboss of the Colombo crime family, would now be overseeing the scheme. Co-Conspirator #1 asked whether "Teddy in Staten Island" was involved, and Vincent Ricciardo explained "this guy," while making a hand signal for the letter "T," which Co-Conspirator #1 understood was Ricciardo's code for Persico, "gave it to this guy," who Ricciardo had earlier pointed out to Co-Conspirator #1:

| | | |
|---|---|---|
| CC#1: | | So this is all being done without the other guys being there. |
| V. RICCIARDO: | | You don't have to be there. He's not in charge of it no more. He told him to settle it. And I'd rather it be that way. But now the big guy and Richie gonna grab this guy which he wants too. |
| . . . | | |
| CC#1: | | You think Teddy in Staten Island, those guys are all in line with that? No problem? |
| V. RICCIARDO: | | They have nothing to say. You understand. **This guy [made a hand signal for the letter "T"] gave it to this guy. This is the last word. That's it.** They dumped it in his lap. |
| CC#1: | | Wow. That's a big change, isn't it? |
| V. RICCIARDO: | | Sure, it's a big change. You know why? |
| CC#1: | | Uh huh. |

This conversation, in which Ricciardo refers to Persico by using a hand signal for the letter "T," reflects that Persico has the power within the crime family to direct even Castellazzo, the individual who was second-in-command. Ricciardo then explained that Persico's order was "the last word," further indicating that Persico had ultimate authority and his decision could not be challenged. Vincent Ricciardo also relayed the same message to Co-Conspirator #1 on April 20, 2021, when he reiterated, "this guy," once again forming a letter "T" with his hands to indicate Persico, "dumped it on him," meaning Castellazzo, and "said whatever decisions you make."

Persico met often with both lower-level members of the organization, including its various captains, and other members of the family's administration. For

5

example, law enforcement surveillance captured members of the Colombo crime family going to Persico's autobody shop when Persico's vehicle was parked outside, including on November 17, 2020 (co-defendants Ralph DiMatteo and Richard Ferrara), February 19, 2021 (Ferrara), March 16, 2021 (DiMatteo and Ferrara), and April 1, 2021 (Ricciardo, Ferrara, and co-defendant Michael Uvino). Law enforcement also observed Persico leaving Russo's home on March 29, 2021.

Persico, who, as defense counsel points out (Def. Motion at 26) is also known as "Skinny," was also included on top-level meetings of the Colombo crime family's administration. For instance, on January 4, 2021, DiMatteo called Russo (RD #1532), which call was intercepted on a judicially authorized wiretap,[3] and the two spoke in an Italian dialect, which they did in an attempt to conceal the substance of their communications. Below is an excerpt of a draft English translation of the call:

| | |
|---|---|
| RUSSO: | Yeah, I know, but I was looking to call him to see if you were seeing him. |
| DIMATTEO: | No, **the skinny guy, I'm going to see him first**. |
| RUSSO: | Oh, oh, where are you? |
| DIMATTEO: | Yeah, where I'm gonna meet him, where I'm gonna go meet him. |
| RUSSO: | Oh, you're in Brooklyn? |
| DIMATTEO: | Yeah, I'm here already, I've been here. |
| RUSSO: | Oh, all right, all right. I thought you were coming here, I was waiting for you. All right. |
| DIMATTEO: | No, I told you, ehh, tomorrow morning [UI] All right? |
| RUSSO: | **Yeah, uh, so you, when you come with the skinny guy.** |
| DIMATTEO: | Yeah, I'll let you know. |
| RUSSO: | [UI] talk to [UI], yeah, talk to the little one. |

In this conversation, Russo directed DiMatteo to come to his residence with the "skinny guy," meaning Persico, and talk to "the little one," meaning Castellazzo. The very fact that

---

[3] The following opposition includes transcripts of wire intercepts. These transcripts are partial and in draft form and are subject to revision.

6

Russo (the boss) directed DiMatteo (the consigliere) to bring Perisco and discuss with Castellazzo (the underboss) shows the significant position that Persico held within the crime family.

Additionally, during the 30 days law enforcement agents monitored Persico's cell phone, agents intercepted approximately 25 calls between known and suspected members of organized crime (TP #36, #37, #47, #111, #121, #208, #210, #239, #246, #283, #285, #294, #303, #316, #317, #340, #368, #390, #401, #455, #468, #479, #494, #499, #500, and #505), and several of these calls were made to arrange in-person meetings with Persico.

E. Persico's Involvement in the Extortion and Money Laundering Scheme

As early as October 2020, Vincent Ricciardo and Uvino sought Persico's counsel in connection with the Colombo crime family's bid to infiltrate the Union. As the evidence indicates and as the government has set forth in previous bail oppositions in this case, Ricciardo and Uvino were frustrated by an internal conflict within the crime family: Vincent Ricciardo believed another member of the Colombo crime family who is not charged in this case ("Colombo Member-1") and his relatives who employed at the Labor Union and Health Fund were unduly profiting from the Union and thwarting the Colombo crime family's effort to take over the Union. Given the Colombo Member-1's position within the crime family, other members advised caution about accusing Colombo Member-1 of wrongdoing or firing his relatives.

As reflected below, Vincent Ricciardo and Uvino discussed seeking Persico's support. For instance, on October 13, 2020, at 4:51 p.m. (VR #852), after speaking with consigliere Ralph DiMatteo, Vincent Ricciardo called Uvino to lament that DiMatteo would not join Ricciardo to confront Colombo Member-1 in connection with the Labor Union.

> V. RICCIARDO: I mean ah, I'm gonna hafta go a different route, I dunno Michael, it's ah-
>
> UVINO: Do you want to take a ride tomorrow to let the, ah, the guy in ah, in the body shop, in ah, Staten Island look at your car?
>
> V. RICCIARDO: Yeah, I would like to do that, if you're available [. . .] I should be free by 12.
>
> UVINO: Okay, so then if you wanna do that, then I'll take a ride with you if you wanna take a ride.
>
> V. RICCIARDO: All right, but in the meantime I'm gonna take a ride there tonight just to see if they're there.
>
> UVINO: Okay.

7

Ricciardo lamented that without DiMatteo's support, he is going to have to "go a different route," meaning he would have to seek support or get permission from elsewhere within the crime family. Uvino then suggested that they visit the "body shop in . . . Staten Island," i.e., Persico, who worked at an autobody shop in Staten Island. This conversion (and others) indicates that they sought to visit Persico, during at a time when they had expressed frustration on other intercepted calls with the Colombo crime family's decisions regarding the infiltration of the Union.

The following month, in November 2020, members of the Colombo crime family met twice at a restaurant in Brooklyn on November 10 and November 19 to discuss, among other things, their efforts to drain money from the Union. Witness testimony and later intercepted calls show that during these meetings, the extortion of the Labor Union and Health Fund was discussed by the Colombo's administration, with the decision that at least $10,000 per month from the Labor Union or Health Fund would need to be kicked up to senior leadership. Based on cell-site location information, wiretap interceptions, license plate readers and physical surveillance, the investigation determined that Persico attended the November 19, 2020 meeting, along with Castellazzo, DiMatteo, Ferrara, and Vincent Ricciardo and other captains. Following the meeting, at 4:30 p.m. (MU #21684), Vincent Ricciardo called Uvino and told him he was "just leaving Brooklyn" and that "[t]hey were all there." Following these meetings, Ferrara was put in charge of supervising the scheme.

Thereafter, Vincent Ricciardo regularly updated Ferrara on the scheme's progress. In turn, Ferrara informed Persico. For instance, on February 3, 2021, Vincent Ricciardo convinced Ferrara to urgently meet with Co-Conspirator #1, who was not a member of the crime family, to discuss the illegal extortion of the Labor Union. Ferrara then called Persico, who agreed to meet Ferrara at a local restaurant in 15 minutes to "see what's going on." (RF #112). Law enforcement observed the same pattern on March 15, 2021. Ferrara agreed to meet Vincent Ricciardo on March 16, 2021, at a coffee shop in the Gravesend neighborhood of Brooklyn on March 17, 2021. Based on information provided by Co-Conspirator #1, Ricciardo provided Ferrara the Labor Union's meeting minutes, which showed that a Union consultant would receive a $600,000 payment should his contract be canceled for any reason—which Co-Conspirator #1 will testify that Ricciardo believed would cut into the Colombo crime family's profits. Less than two hours later, Ferrara called Persico and told him, "I'm coming to see you in a little while, um, and bring you [UI] something." (TP #239). According to surveillance records, Ferrara met DiMatteo at Persico's autobody shop in Staten Island and the men remained inside for approximately 40 minutes.

During the next several weeks, Vincent Ricciardo, Russo, Persico and other members of the crime family variously met to discuss the ongoing issues with their infiltration of the Labor Union, specifically the perceived roadblocks that Colombo Member-1 and his relatives had put in place to frustrate the crime family's ability to target the Union and the Health Fund. For instance, on March 24, 2021, Vincent Ricciardo traveled to boss Russo's home, which he later relayed in an intercepted call was to discuss the extortion of the Labor Union (VR #4610). Five days later, on March 29, 2021, Persico told Ferrara, in an

intercepted call (TP #468), that he was "actually going to take a ride to Long Island real quick to see my brother, I don't know if you wanted to take a ride or not," a visit confirmed by GPS data and law enforcement surveillance of Persico's vehicle.

On April 1, 2021, Vincent Ricciardo and Uvino traveled to the Persico's autobody business to discuss the situation with the Labor Union. Law enforcement surveillance observed several individuals enter the business: first Persico, then Ricciardo and Uvino, who had arrived together in Uvino's vehicle, and finally Ferrara and another individual. Several weeks later, on April 15, 2021, in a conversation consensually recorded by Co-Conspirator #1, Vincent Ricciardo explained to co-defendant Thomas Costa that he and Uvino had went to the "body shop in Staten Island":

| | |
|---|---|
| V. RICCIARDO: | I yelled at him yesterday. I got yelled, I got yelled at from the other, top guys. |
| . . . | |
| V. RICCIARDO: | He did that with everything, listen to me carefully, so what'd he say, they says to me, you know what they tell me, above him? They said listen Vinny, [pause] if you don't respect the man, you gotta respect the position. |
| COSTA: | That's what they said? |
| V. RICCIARDO: | And that's how it is. I apologized. |
| COSTA: | It's still horrible, ha, [UI]. |
| V. RICCIARDO: | I gotta, I'm in a lot of trouble right now up there, I really am, I try to do things the right way and, my patience is running out, and when my patience runs out, I don't give a fuck who's up there or ain't up there. |
| COSTA: | What about the other guy? |
| V. RICCIARDO: | Who? |
| COSTA: | [Colombo Member-1's first name], who? That's the guy you know. |
| V. RICCIARDO: | That's not, I went to his body shop in Staten Island- |
| COSTA: | But I'm saying- |
| V. RICCIARDO: | That's why they're mad. |
| COSTA: | Ha, they'll eventually know that that's happening. |

9

|   |   |   |
|---|---|---|
| V. RICCIARDO: | | That's, that is, that's already done. |
| COSTA: | | Right, so what are they getting mad about? |
| V. RICCIARDO: | | He's on paper. |

Based on information provided by Co-Conspirator #1, in this conversation, Vincent Ricciardo explained that "the other top guys" had "yelled" at him because he sought support from Persico <u>after</u> Ricciardo had met with boss Russo. According to Ricciardo, they instructed him that "if you don't respect the man, you gotta respect the position," meaning Russo. This indicates that Ricciardo sought a different answer than the one Russo had given. According to Co-Conspirator #1, Ricciardo clarified that the other members of the administration weren't angry at him for keeping Persico informed ("that's already done") but because Persico was on supervised release ("he's on paper").

On June 21, 2021, while discussing the Labor Union, Vincent Ricciardo assured Co-Conspirator #1 that the senior leadership of the Colombo crime family was supportive of their scheme to steal Union funds, even when a "new regime" led the crime family:

|   |   |
|---|---|
| CC#1: | Then going forward, well, I mean I'm assuming the deal you made is gonna be honored no matter what, even when the new regime comes in, theoretically, they'll honor what you want, right? |
| V. RICCIARDO: | What new regime? |
| CC#1: | Teddy and [Colombo Member-2's first name] stuff? |
| V. RICCIARDO: | That don't mean nothing, that's done, they can't- |
| CC#1: | They're not gonna bother, with the union? |
| V. RICCIARDO: | Who they gonna bother with? They can't bother nobody, who they gonna bother? |
| CC#1: | They're gonna honor the deal you make with these guys is what I'm saying right? |
| V. RICCIARDO: | Of course they're gonna honor it. **You think they don't know? They know, Teddy knows, he knows,** [Colombo Member-2's first name] knows, he knows, what's the matter with you? You think I just talk to these |

fucking idiots in Brooklyn? It's got nothing to do with you.

This conversation, and information provided by Co-Conspirator #1, demonstrates that according to Vincent Ricciardo, the "new regime" of the crime will support the scheme, namely "Teddy" Persico, because he already knew about the scheme.

A subsequent conversation on July 20, 2021 further indicates Persico's participation in the scheme.

| | |
|---|---|
| CC#1: | That upstairs is not gonna try to change things on him? You know, they've done it before, where they tell him to back off, do this, don't do this. |
| UVINO: | Listen it's too far gone now. |
| CC#1: | Yea, and I said to him, what protection do we have if the other guy takes over? |
| UVINO: | Listen once they see, once they see money, they'll be fine. **Who Teddy**? |
| CC#1: | Yea. |
| UVINO: | **Listen, when he takes? It's smooth sailing**, I was out, he came out with me the other night, we went out to Body English together, forget it, the guy's the best, fucking, I was talking, the guy is the best guy in the world to deal with, he wants to just go out, have a good time, you know, my cousin Joey was there, Joey was just on the best behavior because he didn't, I didn't know how he was, he says boy at the end of the night I realized I coulda loosened up a little, he says I coulda loosened up a little in front of him. He says, he says he's really a good guy, huh? I said I told you, the guy's fucking great. |
| CC#1: | **And he's all okay with everything we're doing?** |
| UVINO: | **Everything. I told him everything's running smooth. No problem, he says do whatever youse have to do.** He don't care about nothing, he just wants to go out, here's a guy, **once he gets a few dollars**, he just wants to go out, have a good time, the guy spent 30 fucking years in jail already, he's only 57, he's just about, you know what, do the right thing with me, ah, and I'm good with |

it, you know, he's not selfish, he's not gonna be greedy, he's not gonna say I'm entitled to ah-

Co-Conspirator #1 asked Uvino what happens "if the other guy," i.e., Persico, takes over the crime family. Uvino clarified that <u>when</u> Persico takes over, it will be "smooth sailing" as far as the crime family's administration is concerned. Uvino explained, "I told him everything's running smooth." Later in the conversation, Uvino reiterated that he was providing Persico an update on the ongoing scheme, to which, according to Uvino, Persico responded, "youse know what you have to do, you know how it has to be done."

> UVINO: Well listen, that's what I told, you know, I told Teddy, once we're in there, I says, then once everything's set, then once it starts rolling it just keeps rolling, but it's gotta get set first, he's like no problem youse know what you are doing, he's like youse know what you have to do, you know how it has to be done, he's goes I dunno, I said no problem, I'm just keeping youse up to date, so, that's why, he's, the only guy with a problem is the problem is the big guy because he's a fucking brokester.

Uvino said he told Persico that soon the family would profit from the Labor Union and health ("once we're in there . . . once everything's set, then once it starts rolling, it just keeps rolling").

\* \* \*

Collectively, the above-described conversations, in addition to other evidence proffered by the government, evidence Persico's lengthy criminal history and decades-long association with the Colombo crime, his inability to comply with any conditions of supervision, his powerful position within the crime family, his knowledge and oversight of Colombo crime family's infiltration and extortion of the Labor Union and Health Fund, and his determination to collect illicit funds through labor racketeering.

II.     Persico's Permanent Order of Detention Should Remain in Place

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). In addition, a court may order detention if there is a "serious risk that the [defendant] will . . . obstruct or attempt to obstruct justice, or . . . intimidate . . . a prospective witness," among other things. 18 U.S.C. § 3142(f)(2)(B). All four factors support Persico's continued detention.

Persico is the heir apparent to the Colombo crime family, and once again, faces charges in connection with an actual, long-running threats of violence directed toward multiple victims. As demonstrated by the conversations and meetings described above, the Colombo crime family operated with a clear hierarchical structure: Vincent Ricciardo and Uvino sought direction from senior members of the crime family, including boss Russo, underboss Castallazzo, consigliere DiMatteo, and boss-to-be Persico; and undertook actions that the senior members permitted and directed them to take. In meetings described above in November 2020; February through April 2021, and July 2021, Persico monitored and sanctioned the extortion of the Labor Union and the long-running plan to excise money meant to benefit Union members and their families, so that he could profit. To recognize only those lower-level members who directly threaten and pressured Union officials (on behalf of and at the direction of superiors) as a danger to the community, and not the family's leadership (who rose to such ranks carrying out the family's dirty work years earlier) would unduly shield the leadership of the mafia.

Given Persico's history and characteristics, pretrial release is not appropriate. Persico's criminal history reveals his 30-year affiliation with the Colombo crime family, and includes instances of threats of violence, witness intimidation and murder. Further, Persico has shown he is unable to complete a single term of court supervision. In 1993, while on furlough for his grandmother's funeral from a lengthy state prison sentence, he ordered an associate to kill a member of a rival faction of the crime family. This behavior demonstrates what Persico is able and willing to do if even temporarily unmonitored. He was released to terms of supervision in 2004, 2008 and 2020, and each time, he quickly resumed the activities of the crime family. For instance, Persico later acknowledged that upon his release in 2004, he returned to the Colombo crime family that very month. Following his 2008 release, Persico pleaded guilty to violating the terms of Court supervision beginning on June 4, 2008—his date of his release from custody. The charged case indicates nothing has changed. Within months of his release in May 2020, Persico not only returned to the Colombo crime family but was selected to be its next leader. The Court should have no confidence that if released, Persico will not do what he has done time and time again — immediately return to his powerful position dictating the Colombo crime family's criminal activity. This Court should therefore detain Persico pending trial.

Defense counsel acknowledges the multiple violations of supervised release and argues that additional conditions and the "moral suasion" of suretors will ensure compliance this time. See Def. Motion at 3. The fact that Persico has convinced suretors to offer their property for his pretrial release hardly assuages these concerns. These relationships did not persuade Persico to terminate his close ties with the Colombo crime family when he was released in May 2020. In fact, the evidence shows dozens of phone calls and meetings with known members of organized crime—a fact Persico himself readily admitted in a monitored call from the Metropolitan Detention Center ("MDC") with one of the proposed suretors in this case. On September 17, 2021, Persico explained to Caller-1, "I'm definitely dead on the violation and lying to the officer. I can live with that, it is what it is. Give me the two years, I'll do it right now."

The evidence demonstrates Persico was aware of the charged scheme as early as November 2020, through Ferrara, a trusted captain. A pattern of phone calls and in-person visits in February and March 2021 demonstrate how information was being passed from Vincent Ricciardo to Ferrara to Persico, and orders were being communicated back down from Russo and Persico to Ricciardo. On April 1, 2021, within a week of two key meetings, as the crime family struggle to resolve the conflict in the family, Persico met Ricciardo and Uvino in person. Both of these co-defendants later confirmed, in conversation which were consensually recorded, that Persico provided supervision, guidance, and support. On June 21, 2021, Ricciardo said, "You think they don't know? They know, Teddy knows, he knows." On July 20, 2021, Uvino explained he was keeping Persico "up to date," and Perisco told him, "youse know what you have to do, you know how it has to be done."

Defense counsel's efforts to counter the government's proffer of evidence regarding specific meetings attended by Persico are without merit.

First, the defense argues that the government cannot show Persico attended the Colombo crime family meetings on November 10, 2020 or November 19, 2020 at a Brooklyn restaurant (Def. Motion at 9-12, 24-26). But Persico admitted as much in a monitored call from the MDC on September 30, 2021. In that call, Persico explained that, in fact, he did attend one of the November meetings but was "pretty sure" he "didn't say much."

| | |
|---|---|
| PERSICO: | All right, all I can say is I'm pretty sure I didn't agree to anything in that meeting, and whatever was said, I'm pretty sure I didn't say much. |
| Caller-1: | Yeah. |
| . . . | |
| PERSICO: | I never went to two meetings in a restaurant, so that's a lie, I only seen him one time and I didn't say nothing at the meeting. |
| . . . | |
| PERSICO: | Yea, I wasn't with [Colombo Member-1], I wasn't at another meeting with him, so that's a lie. |

Despite counsel's arguments to the contrary, Persico's own words indicate he attended a meeting of the Colombo crime family in November 2020. Witness testimony will establish that the members discussed the plan to infiltrate and takeover the Labor Union. Furthermore, intercepted calls will demonstrate during this time, members of the crime family were in frequent discussions about how to successfully target and steal money from the Health Fund. Persico, while on supervised release, attended (and later admitted to attending) at least one meeting with the other members of the administration of the Colombo crime family who were focused on receiving the profits of their illegal labor racketeering scheme.

14

Second, the defense argues the Court should ignore evidence of the March and April 2021 meetings for two reasons: (1) Persico was not a high-ranking member of the Colombo crime family and therefore could not give direction to other members (Def. Motion at 14), and (2) an April 13, 2021 conversation supposedly shows Persico had no knowledge of the scheme (id. at 14-15). As to Persico's position, the government has put forth ample evidence of his 30-year association with the Colombo crime family, as evidenced by two prior federal convictions, intercepted or consensually recorded conversations either directing referencing his role (UVINO: "when [Persico] takes [over]?") or demonstrating his ability to give direction to members of the administration, and numerous in-person meetings and telephone calls with other members of organized crime. Although the defense alleges the government "overstates" Persico's role in the Colombo crime family (Def. Motion at 27), the defense does not dispute that Persico is slated to become the crime family's next official boss. As to the April 13, 2021 conversation, the defense only includes Ricciardo first statement ("they have nothing to say") and fails to include the rest of Ricciardo's comment, which shows Persico's knowledge and control:

> CC#1: You think Teddy in Staten Island, those guys are all in line with that? No problem?
>
> V. RICCIARDO: They have nothing to say. You understand. **This guy [made a hand signal for the letter "T"] gave it to this guy. This is the last word. That's it. They dumped it in his lap.**

Defense counsel's argument that this conversation indicates Persico had not provided direction to Ricciardo is illogical in light of the full statement. Ricciardo goes on to explain that Persico (indicated by the hand signal for the letter "T") had ordered Castellazzo to supervise the scheme. Given that context, Ricciardo's statement should be interpreted to mean "they" (i.e., the crime family administration, including Persico) "had nothing to say" in opposition to the plan.

Third, the defense claims the quoted July 20, 2021 conversation between Uvino and Co-Conspirator #1 fails to suggest, as the government argues, that Persico was aware of the scheme (Def. Motion at 15-16). Not so. Once again, defense fails to acknowledge the end of the conversation, in which Uvino explains Persico supported "everything" required to infiltrate and takeover the Union:

> CC#1: And he's all OK with everything we're doing?
>
> UVINO: Everything. I told him everything's running smooth. No problem, he says do whatever youse have to do.

15

III.     The Conditions of Release Are Insufficient

Releasing Persico on the terms proposed by defense counsel would return him to his home and place of business, from where he carried out much of the charged conduct, met with and contacted other members of organized crime, and allow him the full resources of the Colombo crime family, including access to its violent members and associates. Given Persico's demonstrated ability to act through others, and a bevy of surrogates ready to follow his directions, if released, Persico would effectively be returned to unrestricted leadership of the enterprise. Persico would then be able to continue to profit any time a member or associate commits a crime and to direct any of the various members and associates to carry out additional crimes.

The defendant's proposed bail package and putatively restrictive bail conditions will have no actual effect on his conduct. Further, endorsing the elaborate conditions of release proposed here, which amount to the reconstruction of a detention facility in the defendant's home, would run afoul of the precedent in the Second Circuit on the release of dangerous defendants. See United States v. Millan, 4 F.3d 1038, 1049 (2d Cir. 1993) ("Home detention and electronic monitoring 'at best elaborately replicate a detention facility without the confidence of security such a facility instills.'") (internal quotation marks and citation omitted). Here, the Court need not establish a precedent that an indisputably dangerousness defendant may be released where complex conditions of home incarceration can be imposed. See, e.g., United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) ("the protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility.").

V.      Conclusion

For all the reasons stated above, the government respectfully submits that defendant Theodore Persico's application for bail should be denied and the permanent order of detention remain in effect.

    Respectfully submitted,

    BREON PEACE
    United States Attorney

By:    /s/
    James P. McDonald
    Devon Lash
    Assistant U.S. Attorneys
    (718) 254-7000

cc:    Clerk of Court (JRC)
    Joseph Corozzo, Esq. (Counsel for the defendant)