JMS:JPM/MWG/DEL/ADR
F. #2020R00638

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                         Docket No. 21-CR-466 (S-1) (HG)

ALBERT ALIMENA, et al.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


MEMORANDUM OF LAW IN OPPOSITION
<u>TO CERTAIN OF THE DEFENDANTS' MOTIONS TO SEVER</u>

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


James P. McDonald
Michael W. Gibaldi
Devon Lash
Andrew D. Reich
Assistant U.S. Attorneys
    (Of Counsel)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

    I.    Relevant Offense Conduct ............................................................................. 1

    II.    Relevant Procedural History ......................................................................... 6

ARGUMENT ............................................................................................................... 10

    I.    The Motions for Severance Should Be Denied ........................................... 10

        A.    Applicable Law ................................................................................. 10

        B.    Persico's Motion for Severance Should Be Denied ......................... 13

        C.    The Co-Conspirator Vendors' Motion Should Be Denied ............... 19

CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

Bruton v. United States,
  391 U.S. 123 (1968) ............................................................................................ 12

Richardson v. Marsh,
  481 U.S. 200 (1987) ...................................................................................... 12, 14

United States v. Amato,
  15 F.3d 230 (2d. Cir. 1994) ........................................................................... 12, 13

United States v. Astra Motor Cars,
  352 F.Supp.2d 367 (E.D.N.Y. 2005) .................................................................. 15

United States v. Attanasio,
  870 F.2d 809 (2d Cir. 1989) ............................................................................... 12

United States v. Barrett,
  824 F. Supp. 2d 419 (E.D.N.Y. 2011) .................................................... 11, 13, 15

United States v. Bellomo,
  954 F. Supp. 630 (S.D.N.Y. 1997) ..................................................................... 21

United States v. Bernstein,
  533 F.2d 775 (2d Cir. 1976) ............................................................................... 16

United States v. Cardascia,
  951 F.2d 474 (2d Cir. 1991) ............................................................................... 11

United States v. Carson,
  702 F.2d 351 (2d Cir. 1983) ............................................................................... 22

United States v. Cheese,
  No. 18-CR-33 (NGG), 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020) .................... 10

United States v. DeVillio,
  983 F.2d 1185 (2d Cir. 1993) ............................................................................. 19

United States v. Diaz,
  176 F.3d 52 (2d Cir. 1999) ................................................................................. 20

United States v. El–Gabrowny,
  No. 93-CR-181 (S3) (MBM), 1994 WL 62814 (S.D.N.Y. Feb. 23, 1994) ..... 15-16

United States v. Feyrer,
  333 F.3d 110 (2d Cir. 2003) ............................................................................... 12

United States v. Friedman,
  854 F.2d 535 (2d Cir. 1988) ............................................................... 13, 16

United States v. Gammarano,
  No. 06-CR-072, 2007 WL 2077735 (E.D.N.Y. July 18, 2007).............................................. 17

United States v. Jackson,
  792 F. App'x 849 (2d Cir. 2019) ........................................................ 11

United States v. Jimenez,
  824 F. Supp. 351 (S.D.N.Y. 1993) ...................................................... 12

United States v. Liburd,
  No. 17-CR-296 (PKC), 2019 WL 319392 (E.D.N.Y. Jan. 24, 2019) ............................ 18, 20

United States v. Locascio,
  6 F.3d 924 (2d Cir. 1993) ................................................................... 22

United States v. Locascio,
  357 F. Supp. 2d 536 (E.D.N.Y. 2004) ............................................. 22

United States v. Lyles,
  593 F.2d 182 (2d Cir. 1979) ....................................................... 12, 15

United States v. Minaya,
  395 F.Supp.2d 28 (S.D.N.Y. 2005) ................................................. 15

United States v. Muscarella,
  No. 03-CR-229 (NRB), 2004 WL 2186561 (S.D.N.Y. Sept. 28, 2004) ........................ 20, 21

United States v. Persico,
  621 F. Supp. 842 (S.D.N.Y. 1985) ................................................. 17

United States v. Pirk,
  284 F. Supp. 3d 398 (W.D.N.Y. 2018) ............................................. 15

United States v. Pirro,
  76 F. Supp. 2d 478 (S.D.N.Y. 1999) .............................................. 12

United States v. Pizarro,
  No. 17-CR-151 (AJN), 2018 WL 1737236 (S.D.N.Y. Apr. 10, 2018) ................... 18

United States v. Rittweger,
  524 F.3d 171 (2d Cir. 2008) ....................................................... 13, 18

United States v. Rucker,
  32 F. Supp. 2d 545 (E.D.N.Y. 1999) ............................................. 11

United States v. Salameh,
    152 F.3d 88 (2d Cir. 1998) .............................................................. 21

United States v. Shellef,
    507 F.3d 82 (2d Cir. 2007) .............................................................. 12

United States v. Shkreli,
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ......................................... 22-23

United States v. Stein,
    428 F. Supp. 2d 138 (S.D.N.Y. 2006) ............................................. 16

United States v. Uccio,
    917 F.2d 80 (2d Cir. 1990) .............................................................. 16

United States v. Ventura,
    724 F.2d 305 (2d Cir. 1983) ............................................................ 11

United States v. Walker,
    142 F.3d 103 (2d Cir. 1998) ............................................................ 13

United States v. Webb,
    No. 15-CR-252 (S3) (PKC), 2020 WL 6393012 (E.D.N.Y. Nov. 1, 2020) ............. 20, 21, 23

Zafiro v. United States,
    506 U.S. 534 (1993) ......................................................... 11, 18, 23

**Rules**

Federal Rule of Criminal Procedure 8 ............................................. 10, 11, 12, 15, 16

Federal Rule of Criminal Procedure 14 ................................................. 10, 11, 12, 15

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the two motions for severance filed by defendants Theodore Persico, Jr. (ECF No. 382) and, jointly, by defendants Albert Alimena, Joseph Bellantoni, and Erin Thompkins (ECF No. 411). Joinder is appropriate in this case because each of the moving defendants committed crimes related to or in furtherance of the Colombo crime family's scheme to infiltrate and divert funds from a labor union and affiliated health plan, which is the central scheme charged in this case. The law strongly favors joint trials of defendants who are indicted together to avoid inefficiency and waste of resources, and the moving defendants have not identified any realistic prospect that their trial rights would be prejudiced by a joint trial. Accordingly, for the reasons set forth below, the Court should deny the motions to sever in their entirety.

## FACTUAL BACKGROUND

I.    Relevant Offense Conduct

As charged in the indictment, the defendants were involved in a scheme by members of the Colombo crime family of La Cosa Nostra ("LCN") to infiltrate, extort, and illegally divert funds from a labor union's employee benefit welfare plans. Specifically, beginning in approximately 2001, defendant Vincent Ricciardo, an inducted member of the Colombo crime family, began to extort John Doe #1, a senior official at a labor union based in Queens, New York (the "Labor Union"). Through the actual and threatened use of force, violence, and fear, Vincent Ricciardo collected $2,600 per month from John Doe #1, which Vincent Ricciardo sometimes referred to as a "pension" for himself from the Labor Union.

Later, since at least November 2019, other members of the Colombo crime family, including defendants Ralph DiMatteo, Theodore Persico, Jr., and Michael Uvino expanded the demands on John Doe #1 and attempted to: (1) force the Labor Union's

management to make decisions that benefitted the Colombo crime family; (2) manipulate the selection of vendors for a healthcare fund affiliated with the Labor Union (the "Health Fund") in order to have the Health Fund contract with entities and individuals associated with the Colombo crime family; and (3) divert more than $10,000 per month from the Health Fund's assets to the Colombo crime family.

In addition to extorting money from John Doe #1, the Labor Union, and the Health Fund, the defendants (including the moving defendants) planned to launder funds derived from the extortion of the Health Fund and the theft and embezzlement of the Health Fund's assets. This was to be accomplished, among other ways, by sending a portion of the monies obtained from the Labor Union and Health Fund's accounts through intermediary companies and individuals, who would funnel the money back to co-conspiring Colombo crime family's members.

As relevant to the instant motions, the evidence at trial will show that, in furtherance of the scheme to divert funds from the Labor Union and Health Fund, Vincent Ricciardo and Michael Uvino, among others, used extortionate means to attempt to force officials at the Labor Union and Health Funds to award vendor contracts to service providers who had agreed (as part of receiving the contracts) to pay kickbacks and divert funds to the Colombo crime family. The affected contracts included those for the Health Fund's third-party administrator and vendors for pharmacy benefits, optical benefits, and dental benefits. To that end, Vincent Ricciardo arranged to have movant-defendant Albert Alimena take over as the Health Fund's third-party claims administrator, based on Alimena's agreement to pay at least $10,000 monthly to the Colombo family's administration. For instance, in a recorded conversation, Vincent Ricciardo told a cooperating witness (the "CW") that "the last time we left

off with Albert [Alimena], way back, that he would get at least a one million, point one . . . from everything, give us 10,000 a month." Co-defendant and movant Erin Thompkins was Vincent Ricciardo's girlfriend and worked for Alimena as his administrative assistant. The evidence will establish Alimena and Thompkins's knowledge that they were working with members of LCN; for example, Vincent Ricciardo told the CW that he had known Alimena "his whole life," and that Alimena's company used to be based in Howard Beach, Queens, with the Teamsters Union, "that's how far back we go with [Alimena's company]." The evidence at trial—including the CW's testimony, recorded conversations, and recorded telephone calls obtained pursuant to judicially-authorized wiretaps—will show that both Alimena and Thompkins understood that Alimena's company would earn $1.1 million by serving as the Health Fund's third-party benefits administrator, in exchange for ensuring that the Health Fund paid a monthly kickback of $10,000 to the Colombo crime family.

The evidence will also show that the leadership of the Colombo crime family, including defendant Persico, directed Vincent Ricciardo's efforts to infiltrate the Health Fund on behalf of the Colombo crime family. For example, on the morning of April 1, 2021, law enforcement agents conducting surveillance observed Vincent Ricciardo and Uvino meet with Persico and other members of the Colombo crime family at Persico's autobody shop in Staten Island, New York. According to the expected witness testimony, Vincent Ricciardo advised that Persico and the rest of the Colombo crime family had supported the efforts to take over the Health Fund.

The evidence shows that the meetings between crime family members and co-conspiring vendors like Alimena often occurred in close proximity to one another (and cross-referenced such meetings). For example, shortly after the April 1, 2021 meeting with Persico,

Vincent Ricciardo and the CW traveled to Fort Lauderdale, Florida to meet with Alimena about the scheme. During the trip, Vincent Ricciardo and the CW brought paperwork from the Health Fund to review with Alimena. During one meeting, Alimena then explained how Vincent Ricciardo, a known captain in the Colombo crime family, could expect to receive kickbacks from the Health Fund's vendors, including by choosing a third-party benefit administrator, health vendors, and an attorney aligned with the Colombo crime family.

Movant-defendant Joseph Bellantoni pre-selected vendors who were to take over existing Health Fund contracts on the promise of kickbacks to the Colombo crime family. Bellantoni worked with Vincent Ricciardo to divert funds from the Health Fund to the Colombo crime family by awarding the Health Fund's benefit contracts to vendors aligned with Bellantoni and, by extension, the Colombo crime family. Bellantoni had multiple recorded conversations with Vincent Ricciardo and the CW concerning the scheme to divert funds from the Health Fund to co-conspirators associated with organized crime. For instance, on May 24, 2021, Bellantoni and his father met with Vincent Ricciardo and the CW in Melville, New York, to discuss firing the attorney for the Labor Union and the Health Fund, and installing a new lawyer (the "Lawyer") associated with Bellantoni who would be more friendly to the co-conspirators and their criminal goals. Two weeks later, on June 7, 2021, Bellantoni and the CW met with the Lawyer at a steakhouse in Melville, New York. Before meeting with the Lawyer, Bellantoni told the CW:

> You know she understands that you guys are coming in. When I say you guys, you, coming in to make sure that everything is working properly and that everything is coming over. *We told her that it's a little bit of a hostile takeover*. . . . But that's about it. There is nothing, *Brooklyn politics* anything along those lines.

Bellantoni's reference to a "hostile takeover" shows that he knew the criminal purpose of installing a new lawyer for the Labor Union and Health Fund, and his reference to "Brooklyn politics" was, in this context, a clear reference to the administration of the Colombo crime family.

As another example of Bellantoni's knowledge that he was working with organized crime, on June 14, 2021, Bellantoni, Vincent Ricciardo, and the CW attended a golf outing in Rockville Centre, New York. During the golf outing, Bellantoni introduced the CW to the vendor for dental and vision benefits who had been pre-selected by the Colombo crime family. Before the CW spoke with the vendor, he took Bellantoni aside, and they had the following conversation:

| | |
|---|---|
| CW: | Before we start talking to him what does he know what does [unintelligible] not know. |
| Bellantoni: | Let's put it this way, the only thing he is going to know is that you are a consultant. |
| CW: | Right. |
| Bellantoni: | And that you are looking to bring him in. |
| CW: | Right. |
| Bellantoni: | That's the only thing he needs to know from you. |
| CW: | From me, but what does he actually know? |
| Bellantoni: | He knows everything. |
| CW: | Everything? |
| Bellantoni: | Between you and me. |
| CW: | He knows about us . . . but does he know about . . . |
| Bellantoni: | Yeah, yeah. |

| | |
|---|---|
| CW: | ***Who is behind us.*** |
| Bellantoni: | ***He knows Uncle Vinny, he knows everyone.*** His father . . . |
| CW: | Well I know. |
| Bellantoni: | His father [unintelligible] golf with them. Oh yeah. |
| CW: | His father is. |
| Bellantoni: | Well his father passed but yeah. |
| CW: | His father had a relationship with . . . |
| Bellantoni: | Yeah very good. |
| CW: | So he knows how this gets paid and everything [unintelligible]. |
| Bellantoni: | ***The biggest thing is that he knows that he pays me and I take care of what I got to take care of. So that way it doesn't go directly to any of youse and I take whatever burden is there. That way he is comfortable you are comfortable.*** |

In this conversation, Bellantoni acknowledged that the vendor knew the Colombo crime family was behind the scheme ("he knows Uncle Vinny, he knows everyone"), and that the vendor would divert funds through Bellantoni so as not to implicate Vincent Ricciardo or anyone else in the Colombo crime family.

## II.     Relevant Procedural History

On September 8, 2021, a grand jury in this district returned a nineteen-count indictment charging fourteen defendants with various offenses stemming from various criminal schemes committed by members and associates of the Colombo crime family. On April 13, 2022, a grand jury returned a twenty-one-count superseding indictment, which is the operative

charging document for purposes of the defendants' motions (hereinafter, the "Superseding Indictment").[1]

Charges remain pending against the following eight defendants: Benjamin Castellazzo, Ralph DiMatteo, movant Theodore Persico, Jr., Vincent Ricciardo, Michael Uvino, all of whom are charged with racketeering, among other offenses (collectively, the "Racketeering Defendants"), as well as movants Albert Alimena, Joseph Bellantoni, and Erin Thompkins (the "Co-Conspirator Vendors").

For the Court's convenience, below is a summary of the remaining charges against the remaining defendants in this case. Defendants who have moved for severance are highlighted in bold.

| Count | Charge | Defendants |
|-------|--------|------------|
| One | Racketeering (2001-Sept. 2021) | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| | *Racketeering Act ("R.A.") 1A-1D: Extortion and Extortion Conspiracy of Labor Union and John Doe #1* | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| | *R.A. 2A-2D: Extortion Conspiracy and Attempted Extortion of Health Fund and Service Provider Vendors* | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| | *R.A. 3: Conspiracy to Commit Fraud in Connection with Means of Identification* | Vincent Ricciardo |
| | *R.A. 4A-4B: Extortionate Collection of Credit & Conspiracy* | Vincent Ricciardo and Uvino |

---

[1]     After the return of the Superseding Indictment, defendant Andrew Russo (the Colombo crime family's official boss) passed away, and charges against him were dismissed on the government's motion on May 17, 2022. (See ECF No. 307.) In addition, the defendants Thomas Costa, Richard Ferrara, John Glover, Vincent Martino, John Ragano, and Domenick Ricciardo have each pleaded guilty.

| Count | Charge | Defendants |
|-------|--------|------------|
| | *R.A. 5: Conspiracy to Distribute Marijuana* | Vincent Ricciardo |
| | *R.A. 6: Money Laundering Conspiracy* | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| Two *(also charged as R.A. 1A)* | Hobbs Act Extortion Conspiracy of Labor Union and John Doe #1 (2001-Sept. 2021) (18 U.S.C. § 1951(a)) | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| Three *(also charged as R.A. 1B)* | Hobbs Act Extortion of Labor Union and John Doe #1 (2001-Sept. 2021) (18 U.S.C. § 1951(a)) | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| Four *(also charged as R.A. 2A)* | Hobbs Act Extortion Conspiracy of Health Fund and Service Provider Vendors (Nov. 2019-Sept. 2021) (18 U.S.C. § 1951(a)) | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| Five *(also charged as R.A. 2B)* | Attempted Hobbs Act Extortion of Health Fund and Service Provider Vendors (Nov. 2019-Sept. 2021) (18 U.S.C. § 1951(a)) | Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, and Uvino |
| Six *(also charged as R.A. 3)* | Conspiracy to Commit Fraud in Connection with Means of Identification (Jan. 2020-Sept. 2021) (18 U.S.C. § 1028(f)) | Vincent Ricciardo |

| Count | Charge | Defendants |
|-------|--------|------------|
| Seven | Fraud in Connection with Means of Identification<br>(Jan. 2020-Sept. 2021)<br>(18 U.S.C. § 1028(a)(7)) | Vincent Ricciardo |
| Eight | Conspiracy to Make False Statements (OSHA)<br>(Jan. 2020-Sept. 2021)<br>(18 U.S.C. §§ 371, 1001(a)(2)) | Vincent Ricciardo |
| Ten<br>*(also charged as R.A. 4A)* | Extortionate Collection of Credit Conspiracy<br>(Oct. 2020-Sept. 2021)<br>(18 U.S.C. § 894(a)(1)) | Vincent Ricciardo and Uvino |
| Eleven<br>*(also charged as R.A. 4B)* | Extortionate Collection of Credit<br>(Oct. 2020-Sept. 2021)<br>(18 U.S.C. § 894(a)(1)) | Vincent Ricciardo and Uvino |
| Twelve<br>*(also charged as R.A. 5)* | Conspiracy to Distribute Marijuana<br>(Oct. 2020-Sept. 2021)<br>(21 U.S.C. § 846, 841(b)(1)(C)) | Vincent Ricciardo |
| Thirteen<br>*(also charged as R.A. 6)* | Money Laundering Conspiracy<br>(Nov. 2020-Sept. 2021)<br>(18 U.S.C. § 1956(h)) | **Alimena**, **Bellantoni**, Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, **Thompkins**, and Uvino |
| Fourteen | Conspiracy to Steal and Embezzle Heath Care Benefit Funds<br>(Nov. 2020-Sept. 2021)<br>(18 U.S.C. §§ 371, 664, 669(a)) | **Alimena**, **Bellantoni**, Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, **Thompkins**, and Uvino |
| Fifteen | Health Care Fraud Conspiracy<br>(Nov. 2020-Sept. 2021)<br>(18 U.S.C. § 1349) | **Alimena**, **Bellantoni**, Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, **Thompkins**, and Uvino |

| Count | Charge | Defendants |
|-------|--------|------------|
| Sixteen | Attempted Health Care Fraud (Nov. 2020-Sept. 2021) (18 U.S.C. § 1347) | **Alimena**, **Bellantoni**, Castellazzo, DiMatteo, **Persico**, Vincent Ricciardo, **Thompkins**, and Uvino |
| Seventeen | Concealing Material Information (Nov. 2020-Sept. 2021) (18 U.S.C. § 1001(a)(1)) | **Persico** |
| Eighteen | Material False Statements (Dec. 7, 2020) (18 U.S.C. § 1001(a)(2)) | **Persico** |
| Nineteen | Violation of ERISA Disqualification (Nov. 2020-Sept. 2021) (18 U.S.C. §§ 1111(a), 1111(b)) | Vincent Ricciardo |
| Twenty | Transportation and Possession of Ammunition (Apr. 2021) (18 U.S.C. § 922(g)(1)) | Vincent Ricciardo |

## ARGUMENT

I.  The Motions for Severance Should Be Denied

A.  Applicable Law

An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). But "[a]ll defendants need not be charged in each count." Id. This rule "does not require a common goal or conspiracy, but rather requires only that the counts be connected by common facts or participants or that they arise out of a common plan or scheme." United States v. Cheese, No. 18-CR-33 (NGG), 2020 WL 705217, at *4 (E.D.N.Y. Feb. 12, 2020).

Pursuant to Federal Rule of Criminal Procedure 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a

defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14. "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993); accord United States v. Jackson, 792 F. App'x 849, 852 (2d Cir. 2019). Even where "the risk of prejudice is high . . . less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539.

The Supreme Court has consistently reaffirmed "a preference in the federal system for joint trials of defendants who are indicted together" because such trials promote efficiency and prevent the injustice of inconsistent verdicts. Zafiro, 506 U.S. at 537; see also United States v. Cardascia, 951 F.2d 474, 482-83 (2d Cir. 1991); United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) (where "defendants . . . are jointly indicted [they] should be jointly tried"). Furthermore, joint trials "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." United States v. Rucker, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999); see also United States v. Barrett, 824 F. Supp. 2d 419, 432-33 (E.D.N.Y. 2011).

As the Supreme Court has stated:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling

> more accurate assessment of relative culpability—advantages which
> sometimes operate to the defendant's benefit. Even apart from these
> tactical considerations, joint trials generally serve the interests of
> justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson v. Marsh, 481 U.S. 200, 209-10 (1987); see also Bruton v. United States, 391 U.S.

123, 134 (1968) (joint trials conserve state funds, diminish inconvenience to witnesses, and avoid

delays); United States v. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (joint trials conserve resources,

lessen the burden on jurors and avoid repetitive testimony).

Although Federal Rule of Criminal Procedure 14(a) permits separate trials where

the joinder "appears to prejudice a defendant," courts must balance the efficiency of a joint trial

against the possibility of prejudice to a defendant. See Bruton, 391 U.S. at 131-34; United States

v. Shellef, 507 F.3d 82, 98 (2d Cir. 2007); United States v. Feyrer, 333 F.3d 110, 114 (2d Cir.

2003). For this analysis, "[t]he risks of prejudice attendant in a joint trial are presumptively

outweighed by the conservation of time, money, and scarce judicial resources that joint trial

permits." United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993). The presumption in

favor of a joint trial is especially compelling where, as here, the acts alleged in the indictment are

"unified by some substantial identity of facts or participants or arise out of a common plan or

scheme," United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (internal quotation marks

and citations omitted), or where the defendants are all "charged in the same conspiracy," United

States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999) (collecting cases).

Because Rule 8(b) "authorizes some prejudice against the defendant, a defendant

who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result

in substantial prejudice." United States v. Amato, 15 F.3d 230, 237 (2d. Cir. 1994) (internal

quotations and citations omitted). Thus, a court should sever defendants only where "there is a

serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." United States v. Rittweger, 524 F.3d 171, 179 (2d Cir. 2008) (quoting Zafiro, 506 U.S. at 539); see also United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988) (defendant must show that a "miscarriage of justice" would result to warrant severance); see also United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998) (severance is appropriate only if a defendant can establish a risk of prejudice that is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials"). Ultimately, "the decision of whether to sever a trial is committed to the sound discretion of the district court." Barret, 824 F. Supp. 2d at 433.

B.     Persico's Motion for Severance Should Be Denied

Persico moves to sever his trial from that of Vincent Ricciardo and Michael Uvino.[2] In the alternative, Persico moves to sever from his trial the specific counts in which he is not named as a defendant. Persico asserts that such severance is required to avoid a "mega-trial," which he claims would prejudice him because it would overwhelm the jury and the Court and because it would cause him to remain detained for a longer period of time. (See Persico Mem. at 52-53.) Persico's motion is meritless. Far from meeting the "heavy burden of showing that joinder will result in substantial prejudice," Amato, 15 F.3d at 237, Persico fails to identify any particular prejudice that would result from his being tried alongside his co-conspirators.

As an initial matter, Persico's concerns of a "mega-trial" of "14 defendants" are now moot. As of the filing of this submission, six of those defendants have pleaded guilty, with

---

[2]     Persico has also moved to sever his trial from that of defendants Thomas Costa, John Glover, Vincent Martino, John Ragano, and Domenick Ricciardo (see Persico Mem. at 53); however, since Persico filed his motion, those defendants have all pleaded guilty.

plea negotiations ongoing for others.[3]  Thus, any trial would have at most eight defendants, and

potentially fewer.  In any event, Persico's proposals would not be less "arduous" or present

significantly fewer "separate decisions" to the jury.  (See Persico Mem. at 53.)  Persico's first

proposal would result in two substantially identical trials concerning the Labor Union and Health

Fund scheme, one for him and the Co-Conspirator Vendors, and one for his Colombo enterprise

co-conspirators (with additional counts).  Among other things, each trial would feature

substantially identical testimony, surveillance evidence, and other evidence demonstrating

Persico's direction of Vincent Ricciardo's efforts to infiltrate the Health Fund on behalf of the

Colombo crime family, as well as Persico's, Vincent Ricciardo's and Uvino's conversations

discussing the same.  Persico's second proposal would result in Vincent Ricciardo and Uvino

having to proceed in two separate trials, one with Persico, and one without him.

Granting such severance "would impair both the efficiency and the fairness of the

criminal justice system" in all of the ways contemplated by the Supreme Court in Richardson.

See 481 U.S. at 209-10.  It would result in multiple lengthy trials where nearly all of the

government's evidence would be re-presented against separately tried defendants.  Witnesses,

including victims, would be required to testify multiple times regarding traumatic events

including extorsion and violent threats.  Conversely, a joint trial would "conserve[] judicial

resources, alleviate[] the burdens on citizens serving as jurors, and avoid[] the necessity of

having witnesses reiterate testimony in a series of trials."  Lyles, 593 F.2d at 191.  A joint trial

---

[3]        Persico's argument that the government "concedes" that a trial of 14 defendants
would be "out of the question" is also now moot.  (See Persico Mem. at 51.)  Given the multiple
pleas and possibility of additional pleas, the government does not "agree [] that the Court should
sever the trials."  (See Persico Mem. at 52.)

would also "avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." Barret, 824 F. Supp. 2d at 432.

Nor does Persico's pretrial detention create grounds for severance. Persico argues that because a "mega-trial" would take longer than separate trials, he will remain detained for a longer period of time if his trial is not severed. (See Persico Mem. at 53.) This is unpersuasive. First, as described above, there is no longer any risk of an unduly "long and arduous" "mega-trial" of "14 defendants," as the number of defendants has been cut nearly in half (and may be further reduced). Second, as discussed above, Persico's primary proposal would be unlikely to reduce total trial time at all since it would result in two substantially identical end-to-end trials instead of one.[4] In any event, absent some other showing of prejudice, which Persico has not made, pretrial detention alone does not constitute grounds for severance. See United States v. Astra Motor Cars, 352 F.Supp.2d 367, 370 (E.D.N.Y. 2005) (holding that incarceration alone is not a factor addressed by either Rule 8 or Rule 14); United States v. Minaya, 395 F.Supp.2d 28, 41 (S.D.N.Y. 2005) ("Although the Court is concerned to minimize periods of pre-trial detention, it does not find this consideration to warrant severance of Martinez's trial at this point. In any multi-defendant case in which the defendants have been denied bail, it is almost inevitable that the period of pre-trial detention will be longer than in an action involving only one defendant."); United States v. El–Gabrowny, No. 93-CR-181 (S3) (MBM), 1994 WL 62814, at *2 (S.D.N.Y. Feb. 23, 1994) (rejecting argument that severance was warranted because the defendant would otherwise remain detained for over two years).

---

[4] Notably, Persico argues that "[c]ourts can [] take into consideration 'that certain defendants are in custody pending trial, while others are not'" (see Persico Mem. at 50 (quoting United States v. Pirk, 284 F. Supp. 3d 398, 414 (W.D.N.Y. 2018)), but Vincent Ricciardo and Uvino, from whom Persico wishes to sever his trial, also are detained, and would remain so for longer if they had to wait for Persico's trial to resolve before their trial began.

Importantly, Persico's cursory arguments do nothing to overcome the strong preference in this Circuit for trying co-conspirators together. "It is an 'established rule' that a 'non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b).'" United States v. Uccio, 917 F.2d 80, 87 (2d Cir. 1990) (quoting United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988)); see United States v. Friedman, 854 F.2d 535, 561 (2d Cir. 1988) ("The mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense."). Moreover, because a conspiracy charge "provides a common link [to substantive counts] and demonstrates the existence of a common plan," the joinder of conspiracy and substantive counts is also proper. United States v. Bernstein, 533 F.2d 775, 789 (2d Cir. 1976); United States v. Stein, 428 F. Supp. 2d 138, 142 & n.16 (S.D.N.Y. 2006) ("The claim of an overall conspiracy said to link the substantive crimes charged in an indictment justifies joinder under Rule 8(b)." (citing cases)). Thus, district courts have repeatedly observed that "co-conspirators should be tried together whenever feasible." United States v. Khmelnitski, No. 10-CR-459, 2012 WL 482022, at *2 (E.D.N.Y. Feb. 14, 2012) (quoting United States v. Gambino, 729 F. Supp. 954, 970 (S.D.N.Y. 1990)).

As described above, Persico, Vincent Ricciardo, Uvino, and all other remaining defendants (including all moving defendants) were part of a common scheme to siphon monies from the Labor Union and the Health Fund through vendor contracts. The agreements and activities between November 2019 and September 2021 in furtherance of that conspiracy prove the existence of the conspiracy itself, the results of the conspiracy, and the role played by each individual defendant. This includes, as just one example, Persico's direction of Vincent Ricciardo's efforts to infiltrate the Health Fund on behalf of the Colombo crime family and the

April 2021 meeting among Persico, Vincent Ricciardo and Uvino where these efforts were discussed. All such evidence is admissible—and will in fact be offered—against each defendant, regardless of whether they are tried together or separately. Thus, Persico will not be prejudiced by a trial with Vincent Ricciardo and Uvino. See, e.g., United States v. Gammarano, No. 06-CR-072, 2007 WL 2077735, at *9 (E.D.N.Y. July 18, 2007) (denying severance because separate trial would not have shielded defendant, an alleged member of the Gambino crime family, from evidence of the Gambino organization's "existence and activities," which was relevant and admissible "to prove both an enterprise and a pattern of racketeering under [the racketeering statute]") (quoting United States v. Gotti, 02-CR-743, 2004 WL 602689, at *6 (S.D.N.Y. Mar. 26, 2004)).

This is especially true for alleged members of an LCN crime family, like Persico, Vincent Ricciardo and Uvino, who are charged together in with racketeering ("RICO"). As courts in this Circuit have acknowledged, trying such defendants together is critical to proving the nature and existence of the alleged racketeering enterprise, its command structure and its coordinated criminal conduct. See, e.g., United States v. Persico, 621 F. Supp. 842, 854 (S.D.N.Y. 1985) ("[T]he government is attempting to root out an organization whose business it claims is crime. This is what Congress intended in enacting RICO. To compel the government to attack this alleged organization through seriatim trials would frustrate the intent of RICO by failing to provide juries with a complete picture of the business or needlessly compel duplicate presentations of evidence and endanger witnesses.").

Finally, the additional criminal schemes charged in the Superseding Indictment not naming Persico (loansharking, drug-trafficking, false statements and possession of ammunition) are discrete and easily distinguished from the labor union scheme, and the

government does not expect that any of these criminal schemes will be a principal focus of trial. Accordingly, there would be little risk of prejudice to Persico, as the evidence and relevant arguments will be clearly delineated from the primary scheme to extort and infiltrate the Labor Union and the Health Fund. See, e.g., United States v. Liburd, No. 17-CR-296 (PKC), 2019 WL 319392, at *7 (E.D.N.Y. Jan. 24, 2019) (denying severance; "Because the substantive charges against Liburd relate to a single robbery, the evidence relating to his charges will be easily separated and distinguished from the evidence against the other defendants at trial, and so the jury will be able to consider it without any significant spillover effect"). Moreover, the other charged conduct is no more inflammatory than the conduct with which Persico is charged, namely, directing a violent extortion scheme as a high-ranking member of a well-known LCN crime family. See, e.g., United States v. Pizarro, No. 17-CR-151 (AJN), 2018 WL 1737236, at *6 (S.D.N.Y. Apr. 10, 2018) (denying severance where evidence of crime defendant sought to have severed was "far less inflammatory than" the remaining charge). Accordingly, "less drastic measures [than severance], such as limiting instructions, . . . will suffice to cure any risk of prejudice" in this case. Zafiro, 506 U.S. at 539; see Rittweger, 524 F.3d at 179 (finding no prejudice where "the district court gave limiting instructions throughout the trial explaining when evidence could not be considered against a particular defendant, and the jury charge carefully explained that the jurors must consider the case against each defendant separately"). Indeed, courts have held that a limiting instruction is sufficient to address concerns of prejudicial spillover even where evidence of a co-defendant's crimes were comparatively more violent or otherwise inflammatory. See, e.g., United States v. DeVillio, 983 F.2d 1185, 1187 (2d Cir. 1993) (holding that an "explicit limiting instruction" was sufficient to mitigate the potential for

spillover prejudice of evidence involving an attempted murder committed by a co-defendant, where two other defendants who sought severance were charged only with theft-related crimes).

For these reasons, Persico's motion to sever in either manner should be denied.

C.      The Co-Conspirator Vendors' Motion Should Be Denied

The three Co-Conspirator Vendors move to sever their trial from that of the Racketeering Defendants principally because of the asserted potential for spillover prejudice from evidence that will be introduced against the Racketeering Defendants, including enterprise evidence concerning the existence of the Colombo crime family.  (See Co-Conspirator Vendors Mem. at 4-6.)

The Co-Conspirator Vendors fall well short of establishing that they will suffer spillover prejudice at a joint trial with their remaining co-defendants.  As an initial matter, although the Co-Conspirator Vendors are not charged with racketeering, the evidence at trial will establish that they worked hand-in-hand with members of LCN, fully aware of the affiliations of their co-conspirators.  Moreover, the vendors were a critical part of central scheme at issue, as they were the source of the expected profit from the Health Fund's accounts.  Given that the evidence at trial will prove that the Co-Conspirator Vendors participated in this scheme knowing that they were going to make kickback payments to the Colombo crime family, there is no additional prejudice if some of those crime family members are present with the Co-Conspirator Vendors at trial.  Given that the Co-Conspirator Vendors were inextricably intertwined with the Colombo crime family's efforts to take over the Labor Union and Health Fund, the government would seek to admit evidence of the Colombo crime family's existence, membership, and modes of operation even if the Co-Conspirator Vendors were the only remaining defendants.  For this reason, severance is unwarranted.  See, e.g., United States v. Diaz, 176 F.3d 52, 103 (2d Cir. 1999) (severance properly denied where challenged "evidence would have been admissible

against all of these defendants even if each had been tried separately"); Liburd, 2019 WL 319392, at *7 (denying severance where "the government would still need to present evidence relating to" the severed counts, which "would result in an unnecessary duplication of the government's effort in presenting the case for trial and expenditure of the Court's resources").

Moreover, there is no merit to the Co-Conspirator Vendors' conclusory assertion that severance is required merely because they are not charged in the racketeering count. "Where the alleged RICO enterprise involves underlying crimes of a similar nature, courts in this circuit have found insufficient prejudice to grant severance, even with respect to defendants not charged in the alleged overarching RICO enterprise." United States v. Webb, No. 15-CR-252 (S3) (PKC), 2020 WL 6393012, at *7 (E.D.N.Y. Nov. 1, 2020) (citing cases). United States v. Muscarella, No. 03-CR-229 (NRB), 2004 WL 2186561 (S.D.N.Y. Sept. 28, 2004), is illustrative. The Muscarella case involved allegations that members and associates of the Genovese crime family of La Cosa Nostra had corrupted a labor union to obtain various benefits. Certain members and associates of the Genovese crime family were charged with racketeering offenses, and other defendants were charged only with extortion and mail fraud crimes relating to the same criminal scheme. See id. at *1. The defendants not charged with racketeering offenses moved for severance, claiming that they would suffer unfair spillover prejudice at a joint trial with the racketeering defendants. The district court rejected this argument and denied the motion. The court determined that there was "a sizable common element of proof" against all defendants concerning the labor extortion scheme, and that any spillover prejudice could be "mitigated by jury instructions." Id. at *9. This case is substantially similar, in that the government expects that most of its evidence against all defendants will revolve around the scheme to infiltrate the Labor Union and Health Fund. That evidence will include, among other things, (1) intercepted

communications, obtained pursuant to judicially-authorized wiretap orders, in which Vincent

Ricciardo discussed the scheme with other co-conspirators; (2) the CW's testimony and

recordings made by the CW concerning the scheme; and (3) surveillance of the defendants,

including the Co-Conspirator Vendors, meeting with known members of the Colombo crime

family in furtherance of the scheme.

In short, this is not a case where the Co-Conspirator Vendors "face[] charges that

differ[] significantly in nature and severity from those of the RICO defendants." Webb, 2020

WL 6393012, at *7 (distinguishing cases). To the contrary, because the Co-Conspirator Vendors

"are alleged to have participated in a common plan or scheme" directly with the Racketeering

Defendants, the preference for a joint trial "is particularly strong." United States v. Salameh,

152 F.3d 88, 115 (2d Cir. 1998).

The circumstances of this case are a far cry from those at issue in United States v.

Bellomo, 954 F. Supp. 630 (S.D.N.Y. 1997), one of the principal decisions upon which the Co-

Conspirator Vendors rely. In Bellomo, the court concluded that defendants charged only with

gambling offenses should be severed from defendants charged with a racketeering count alleging

predicate acts that included murder. See 954 F. Supp. at 650-51 ("The Gambling Defendants are

alleged to have committed only a small number of violations of the gambling laws, yet the

government proposes to have them go through a trial in which a large criminal enterprise will be

alleged."). Here, by contrast, there are no charges of extreme violence. Rather, the Co-

Conspirator Vendors are alleged to have participated in the central scheme with which the

Racketeering Defendants are charged, as well.

For similar reasons, this case is also distinguishable from United States v.

Locascio, 357 F. Supp. 2d 536 (E.D.N.Y. 2004), the other decision that the Co-Conspirator

Vendors offer in support of their motion. In <u>Locascio</u>, another organized crime case, the court concluded that severance of defendants not charged with racketeering offenses was appropriate because "evidence as to organized crime, if admissible at all, would be extremely limited in scope and purpose" in a trial only against the non-racketeering defendants. 357 F. Supp. 2d at 545. Moreover, the court determined that severance was appropriate because the case involved eleven defendants and twenty counts, and trial was estimated to last four months or longer. <u>See id.</u> In this case, there are far fewer defendants, fewer counts, and trial is not expected to last nearly as long. And as already discussed, the role of the Co-Conspirator Vendors is closely related to the central scheme charged in the racketeering count.

Even if the evidence were to show that the Co-Conspirator Vendors were relatively less culpable than some of their co-defendants, that difference is not a basis for severance given the efficiencies gained from a joint trial. Indeed, the Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." <u>United States v. Locascio</u>, 6 F.3d 924, 947 (2d Cir. 1993) (collecting cases); <u>United States v. Carson</u>, 702 F.2d 351, 366-67 (2d Cir. 1983) (affirming court's denial of severance motion despite the fact that defendant played a less prominent role in the drug conspiracy charge and stating, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials"); <u>United States v. Shkreli</u>, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017) ("It is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role. . . . A disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance." (internal quotation marks and citation omitted)). And

there is no basis for a severance "simply because a trial is long and involves multiple defendants with varying charges." Webb, 2020 WL 6393012, at *6 (citing cases).

Finally, as discussed above in opposition to Persico's severance motion, the additional criminal schemes (loansharking, drug-trafficking, false statements, and possession of ammunition) are discrete and easy to distinguish from the labor union scheme, the government does not expect that any of these criminal schemes will be a principal focus of trial, and the other charged conduct is no more inflammatory than the conduct with which the Co-Conspirator Vendors are charged. And even if evidence of the other crimes were more inflammatory, as discussed above, "less drastic measures [than severance], such as limiting instructions, . . . will suffice to cure any risk of prejudice" in this case. Zafiro, 506 U.S. at 539; see supra at 18-19.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendants' motions for severance are without merit and should be denied in their entirety.

Dated:     Brooklyn, New York
           February 10, 2023

                                    Respectfully submitted,

                                    BREON PEACE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

                      By:    _____/s/_____
                                    James P. McDonald
                                    Michael W. Gibaldi
                                    Devon Lash
                                    Andrew D. Reich
                                    Assistant United States Attorneys
                                    (718) 254-7000