

JPM/DEL/MWG/ADR

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

March 3, 2023

By ECF and E-mail

| | |
|---|---|
| The Honorable Rachel P. Kovner | The Honorable Hector Gonzalez |
| United States District Judge | United States District Judge |
| Eastern District of New York | Eastern District of New York |
| 225 Cadman Plaza East | 225 Cadman Plaza East |
| Brooklyn, New York 11201 | Brooklyn, New York 11201 |

Re: United States v. Theodore Persico, Jr.
Criminal Docket Nos. 21-466 (S-1) (HG); 10-147 (RPK)

Dear Judge Kovner and Judge Gonzalez:

The government respectfully submits this letter in opposition to defendant Theodore Persico, Jr.'s third application for pretrial release (the "Motion") in the above-referenced matters.[1] As the government submitted in its prior oppositions to bail for the defendant,[2] the defendant was and remains a high-level member of the Colombo organized crime family of La Cosa Nostra, with a long history of serious felony convictions (most related to the Colombo crime family), who committed numerous new offenses in 2020 and 2021 related to extortion, money laundering and false statements. Following his release from his last three prison terms, going back to 2004, the defendant has quickly violated either parole conditions or terms of supervised release. He was and remains a danger to the community, and the permanent order of detention should be continued.

I. Background

The defendant is presently charged with eleven felony counts in the Superseding Indictment in Case No. 21-CR-466 (S-1) (HG): (1) racketeering, in violation of 18 U.S.C.

---

[1] The application is docket entry 425 in Case No. 21-CR-466 (S-1) (HG), and docket entry 933 in Case No. 10-CR-147 (RPK). The filings are essentially identification and will be referred to here collectively as the "Motion."

[2] The government's prior opposition was filed as docket entry 275 in Case No. 21-CR-466, and as docket entry 921 in Case No. 10-CR-147.

§ 1962(c) (Count One); (2) Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a) (Count Two); (3) Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a) (Count Three); (4) Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a) (Count Four); (5) attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a) (Count Five); (6) money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Thirteen); (7) conspiracy to steal and embezzle health care benefit funds, in violation of 18 U.S.C. §§ 371, 664 and 669(a) (Count Fourteen); (8) health care fraud conspiracy, in violation of 18 U.S.C. §§ 1349 and 1347 (Count Fifteen); (9) attempted health care fraud, in violation of 18 U.S.C. § 1347 (Count Sixteen); (10) concealing material information from the U.S. Probation Office, in violation of 18 U.S.C. § 1001(a)(1) (Count Seventeen); and (11) making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Eighteen). In addition, the defendant was charged, at the time the initial Indictment was returned in September 2021, with 15 violations of supervised release stemming from the same criminal schemes, as well as for associating with other members of the Colombo crime family.[3]

Two magistrate judges have already considered at length the defendant's bail applications. First, on September 14, 2021, the defendant was arrested and arraigned before the Honorable Taryn A. Merkl, United States Magistrate Judge. At that time, defense counsel proffered that the defendant could offer a $2 million bond secured by at least seven financially responsible sureties and six properties and would agree to home detention. Magistrate Judge Merkl questioned whether this proposed package "would attempt to replicate" a prison-setting, noting "the Second Circuit has looked unfavorably on [this] in cases involving organized crime people who have a high position in the organization." 9/14/20 Arraignment Transcript at 21:18-21. Judge Merkl noted that the defendant, a high-ranking captain, is alleged to be the next boss of the Colombo crime family and therefore posed a danger because his associates could act on his behalf. She asked: "What is the assurance that Mr. Persico would not — would abide by the conditions of release if he can't abide by probation?" Id. at 23:16-18. At the hearing, Judge Merkl explained her decision to deny Persico's application for release:

> [A]s you acknowledged at the beginning, at the outset of your remarks, you sort of have a tough row to hoe here given Mr. Persico's lengthy criminal history and the sort of speed with which he seems to get reinvolved in the affairs of the Columbo crime family upon his release. I understand your factual arguments as to the government's -- I'm not going to say dearth because we don't know what all the evidence is in this case, as you've identified. The evidence as to his involvement in the specific activities of the union could certainly be stronger. That could have been exculpated in the detention memo. But what I do think the detention memo does a good job of showing and what I think [the government] has done a good job of demonstrating is that Mr. Persico does play a leadership

---

[3] Because Persico was on supervised release, he carries the burden of establishing by clear and convincing evidence that he will not flee or pose a danger to any other person or to the community. Fed. R. Crim. Pro. 32.1(a)(6).

> role in the Columbo crime family and has been able to return to that role despite periods of incarceration. And because of his status as somebody who was on supervised release while these things were going on, I cannot release him today. I find that he does present a danger to the community and I do find that the government has shown that by clear and convincing evidence

Id. at 37:20-38:17.

The second bail hearing, before the Honorable James R. Cho, United States Magistrate Judge, occurred on March 23, 2022. As the defense acknowledges in its new application, most of the proposed conditions of release are the same as they were last March. See Motion at 9. The government argued in the prior hearing that releasing Persico on the terms proposed would return him to his home and place of business, from where he carried out much of the charged conduct, met with and contacted other members of organized crime, and allow him the full resources of the Colombo crime family, including access to its violent members and associates. The government further noted that the defendant has and would continue to act through others, as he had a bevy of surrogates ready to follow his directions, if released. The government again articulated that offering to construct what amounts to a porous mini-prison at Persico's home would be contrary to Second Circuit precedent, see United States v. Millan, 4 F.3d 1038, 1049 (2d Cir. 1993) ("Home detention and electronic monitoring 'at best elaborately replicate a detention facility without the confidence of security such a facility instills.'") (internal quotation marks and citation omitted), and, respectfully, purposeless as the defendant would retain abilities to leave for various "approved" activities and could access cellular devices without meaningful limitation. The defendant's application was again denied.

II.     Argument

The defendant's Motion fails to identify any errors in the conclusions of the two magistrate judges who have considered his bail applications previously. The defendant instead attempts a new tactic of accepting as true some of the most pertinent factors justifying detention that the earlier courts have relied upon in reaching their determinations.

First, the Motion acknowledges the apparent certainty that the defendant violated his supervised release conditions. See Motion at 5 ("We acknowledge the magistrate's concern about the weight of the evidence in the related, ongoing VOSR matter. The alleged violations of Mr. Persico's supervised release admittedly do not reflect well upon the defendant."). This hardly captures the extent of the violations. As the government described in its prior opposition, ECF No. 275, at 7, during the 30 days law enforcement agents monitored Persico's cell phone, agents intercepted approximately 25 calls between known and suspected members of organized crime (TP #36, #37,[4] #47, #111, #121, #208, #210, #239, #246, #283, #285, #294, #303, #316, #317,

---

[4] For example, in the interceptions of Persico captured as TP #36 and #37, on March 7, 2021, Persico called Francis Guerra, a former co-defendant in Case No. 10-CR-147 (and who was then part of the residential reentry program, but had been released early due to Covid-19). The two discussed, among other matters if the other had an encrypted messaging application to speak or text over, and also discussed meeting. Further, from the defendant's prison calls after

3

#340, #368, #390, #401, #455, #468, #479, #494, #499, #500, and #505), and several of these calls were made to arrange in-person meetings with Persico. Given the number of telephone calls (from multiple wiretapped telephones, including the defendant's) and surveilled meetings between the defendant and other Colombo family members, the evidence of the violations is simply overwhelming.

Second, the Motion attempts to dispense of the Court considering (as Judge Merkl clearly articulated as a concern) whether the defendant's promises to follow conditions could be trusted. See id. ("No one would have contested that Bernie Madoff could have been inherently trusted . . ."). Trust is critical; the ability to trust the defendant to follow the promises he would need to make to secure his release is fundamental to bail. The fact that in each of the defendant's three prior releases from prison, the defendant violated conditions of release remains clear evidence that his release here would lead to the same result.

Third, as in his earlier papers in support of bail, the Motion appears to accept the seriousness of the defendant's prior criminal history. See id. at 6 ("We acknowledge that Mr. Persico's criminal history is relevant and is not to be taken likely. However, his criminal history is only one facet of the history and characteristics of Mr. Persico, and the Court should consider other facets, as well."). This brief acknowledgement does not address the magnitude of the defendant's conduct over the last 30 years, including four convictions in the 1980s (the last resulting in a 15-year sentence), his possession of a firearm and violent extortion in 2004 (sentence of 42 months' imprisonment), and conspiracy to commit murder in aid of racketeering conviction in 2012 (resulting in a 120 month sentence). That murder conspiracy was itself carried out while the defendant was on brief release from prison when, during a furlough for a wake, he ordered members of his crew to kill Joseph Scopo, a member of a rival faction of the Colombo crime family. Scopo was shot and killed in front of his home in Queens. Notably, the Bail Reform Act makes specific reference under "history and characteristics" to whether the offense committed was done while under court supervision. 18 U.S.C. § 3142(g)(3)(B). Over the past three decades, the defendant has regularly violated conditions of release. Further, the defendant's new crimes in this case were undertaken while the defendant had the same family support, relationships, and health matters proffered in the Motion. The history of recidivism by the defendant suggests that these other pertinent factors do not operate meaningfully to check his criminal activities with the crime family.

In addition to attempting to minimize the significance of the government's prior arguments for detention by accepting their accuracy, the Motion continues to press an irrelevant and misleading contention that "misinformation" provided by a confidential source about Persico's role as boss of the crime family so colored the government's investigation as to render our proffers about the evidence meaningless. See Motion at 3, 4 ("Respectfully, we submit that this would make no sense. . . the underboss would have outranked Mr. Persico"), 6 ("Namely, we submit that the Government continues to exaggerate both as they have trouble reconciling the

---

his arrest on the new charges, that Guerra sought to work at the defendant's autobody shop, among other matters. In brief, from the earliest interceptions of Persico's phone and continuing into his present detention, the defendant has maintained contacts with surrogates and proxies capable of carrying out his instructions.

actual evidence with the fact that they were wrong about Mr. Persico being the boss of the enterprise."). This is the principal salvo against the government's prior arguments concerning the weight of the evidence as to the charges in the Superseding Indictment (with the exception of his false statements and misleading acts toward his Probation Officer). This contention is legally irrelevant as to Persico's guilt, as the evidence proffered to date has clearly established the defendant's involvement in the extortion of the Labor Union and Health Fund and his supervisory role (whether boss, captain or something in between). Further, the government has not relied on the assertion that Persico is the boss of the family to support its detention arguments; to the contrary, the government previously laid out (over three pages in the last bail opposition) specific example of the defendant exercising a leadership role and statements by other crime family members indicated that he was slated to be the next boss of the Colombo crime family. The government has only advanced the unremarkable argument that various captains and soldiers in the family wanted to and did obtain the defendant's approval of their plans concerning the extortion scheme (or other family business) before acting. Thus, co-defendants Vincent Ricciardo, Michael Uvino and Richard Ferrrara met with the defendant at his autobody shop in Staten Island on April 1, 2021, which occurred in the middle of the crime family determining how to proceed on critical parts of the extortion plan involving the Labor Union and Health Fund. Notably, several hours after the defendant's meeting with Vincent Ricciardo, Uvino and Ferrara, he met with consigliere Ralph DiMatteo at a restaurant in Staten Island, which was surveilled and photographed by law enforcement:



This series of meetings (all with people deeply involved in the extortion of the Labor Union and Health Fund) preceded the April 13, 2021 decision by the defendant (previously described by the

government) that Benjamin Castellazzo would handle the matter (which involved, in part, settling a dispute between rivaling captains in the family).[5]

Nor does Persico's Motion reconcile (if he did not hold the senior role the government or other members of the crime family perceived) why he met often with lower-level members of the organization, including its various captains, and members of the family's administration. For example, law enforcement surveillance captured members of the Colombo crime family going to Persico's autobody shop when Persico's vehicle was parked outside, including on November 17, 2020 (co-defendants Ralph DiMatteo and Richard Ferrara), February 19, 2021 (Ferrara), and March 16, 2021 (DiMatteo and Ferrara). See ECF No. 275, at 6. The co-defendants have put context on these meetings. From the early days of the government's investigation, it was clear that Vincent Ricciardo and Michael Uvino sought to use Persico (and others close to him) as leverage in their dealings with the consigliere and others in the crime family. As reflected below, Vincent Ricciardo and Uvino discussed seeking Persico's support. For instance, on October 13, 2020, at 4:51 p.m. (VR #852), after speaking with consigliere Ralph DiMatteo, Vincent Ricciardo called Uvino to lament that DiMatteo would not join Ricciardo to confront another Colombo family captain in connection with the Labor Union. This led Uvino to suggest they go speak to Persico ("Do you want to take a ride tomorrow to let the, ah, the guy in ah, in the body shop, in ah, Staten Island look at your car?"). And at the end of the investigation, the pattern of consulting Perscio continued, with Michael Uvino recounting to a cooperating witness his own conversation with Persico about the plans for the Labor Union and Health Fund on July 20, 2021 ("I told him [Persico] everything's running smooth. No problem, he says do whatever youse have to do. He don't care about nothing, he just wants to go out, here's a guy, once he gets a few dollars, he just wants to go out, have a good time, the guy spent 30 fucking years in jail already, he's only 57, he's just about, you know what, do the right thing with me, ah, and I'm good with it, you know, he's not selfish, he's not gonna be greedy, he's not gonna say I'm entitled to ah-").

Persico was the heir apparent to the Colombo crime family, and once again, is charged with committing new offenses shortly after being released from prison. While the government acknowledges the defendant may have other obligations for family and his business, the record conclusively demonstrates that his attendance to the matters of the Colombo crime family will also be prioritized. The bail determination here must be based on that fact—that the defendant is a committed leader of a dangerous and violent criminal organization. His prior incarcerations have not changed that outcome, nor is it likely that this prosecution will. At bottom, his detention and future imprisonment here are about incapacitation and prevention of all-but-certain future criminal activity by the defendant for the benefit of the crime family.

---

[5] Vincent Ricciardo's decision to go to Persico also resulted in him being admonished by, in his own words, "the other, top guys," referring to Andrew Russo and DiMatteo. Ricciardo explained that they told Ricciardo that even if he did not respect Russo, he needed to respect his role as boss. This was in connection with Ricciardo visiting the defendant at the autobody shop in Staten Island and, to other members of the crime family, a blatant attempt to have Persico provide different instructions than Russo.

The defendant's proposed bail package and putatively restrictive bail conditions will have no actual effect on his conduct, as all prior conditions of release have been essentially meaningless. Nor should the Court endorse the offer to self-construct a detention facility in the defendant's home, which would run afoul of the precedent in the Second Circuit on the release of dangerous defendants. The prior judicial considerations of release have been thorough and well-grounded in their denials, and the instant Motion presents no bases for overturning such decisions.

III.     Conclusion

For all the reasons stated above, the government respectfully submits that defendant Theodore Persico, Jr.'s application for bail should be denied and the permanent order of detention remain in effect.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
James P. McDonald
Devon Lash
Michael W. Gibaldi
Andrew Reich
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court
Joseph Corozzo, Jr., Esq. (Counsel for the defendant)
Pre-Trial Services