# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **VIOLATION OF SUPERVISED RELEASE REPORT** |
| | ) | |
| | ) | **Docket No.:** 0207 1:21CR00466-009 |
| **Theodore Persico** | ) | |
| | ) | |

**Prepared for:**     **THE HONORABLE HECTOR GONZALEZ, U.S. DISTRICT JUDGE**

**Prepared by:**

**Assistant U.S. Attorney**
Devon Lash
271-A Cadman Plaza East
Brooklyn, NY 11201
718-254-6014
devon.lash@usdoj.gov

**Defense Counsel**
Joseph R. Corozzo
260 Madison Ave
New York, NY 10016
212-545-8777
jcorozzo@rubcorlaw.com

Angela Lipsman
260 Madison Ave, 22d Floor
New York, NY 10016
212-545-8777
alipsman@rubcorlaw.com

| | |
|---|---|
| **Date Supervision Commenced:** | July 2, 2025 |
| **Date Report Prepared:** | January 13, 2026 |
| **Scheduled Termination Date:** | July 1, 2028 |
| **Release Status:** | At Liberty |

## IDENTIFYING DATA



**Gender:**  Male



## Original Offense and Previous Criminal History

<u>Original Offense</u>

**<u>Count 1</u>**:
Racketeering
18 U.S.C. § 1962(c), 18 U.S.C. § 1963(a)
Not more than 20 years imprisonment/$250,000 fine
(Class C Felony)

<u>Offense Conduct</u>

Between approximately November 2019 and September 2021, Persico participated with others, in an extortionate scheme targeting ████████████████████████████████ Local Union ██████ and its associated employee welfare benefit funds, pursuant to which the conspirators sought to compel Local ██████ management, through fear and coercion, to make decisions beneficial to the Colombo crime family, to manipulate and control the selection of benefit-fund vendors so that contracts would be awarded to entities and individuals aligned with the crime family, and to divert in excess of $10,000 per month from fund assets to the conspirators and their associates; In furtherance of these objectives, Persico attended and participated in leadership-level meetings with others where the union takeover, vendor-control plan, and distribution of illicit proceeds were discussed and authorized, including a meeting at which a framework was set for directing the installation of a preferred individual into a fund administrative role and for channeling specified monthly payments to senior crime-family leadership via selected vendors, and that Persico thereafter supported continued pressure to

remove noncompliant persons and to maintain the crime family's control over Local ▇ and the

▇ Benefit Fund.

Date of Plea or Guilty Verdict:  **7/12/2023**

Date Offense Ended:  9/30/2021

Summary of Prior Arrest History:

Persico was arrested once as a juvenile for ▇▇▇▇ . As an adult he was arrested

six (6) times, as follows: unspecified drug offense; Attempted Grand Larceny; Disorderly

Conduct; Criminal Sale of a Controlled Substance; and two prior federal Racketeering

convictions excluding the instant offense.

Persico violated a New York State Probation term (new criminal conduct), a New York

State Parole term (new criminal conduct) and a previous federal supervised release terms (new

criminal conduct).

Criminal History Category:   III

**Original Sentence, Modification(s), and Previous Violation(s)**

Sentence Date:  12/15/2023

Original Sentence:

Sixty (60) months' custody followed by three (3) years' supervised release.  Remainder

of the term of supervised release under docket 1:10CR00147 to run concurrent with the term of

supervised release imposed under docket 1:21CR00466.  The following special conditions of

supervision were imposed: 1) Compliance with the imposed restitution order; 2) Full disclosure

of financial records to the Probation Department; 3) No contact with the victims in the instant

offense; and 4) No contact with members of organized crime or gangs.

## SPECIFIC VIOLATION CHARGE(S)

Persico failed to conform to the following conditions of supervised release as set forth in

the Judgment Order dated December 15, 2023.

### Charge One:

On or about August 29, 2025, Persico violated the following special condition of

supervision: *"The defendant shall not associate in person, through mail, electronic mail, or*

*telephone with any individual with an affiliation to any organized crime groups, gangs or any*

*other criminal enterprise; nor shall the defendant frequent any establishment, or other locale*

*where these groups may meet pursuant, but not limited to, a prohibition list provided by the*

*Probation Department."* Specifically, Persico had contact with **Salvatore Fusco**, a member of

the Colombo crime family.

### Charge Two:

On or about September 8, 2025, Persico violated the following special condition of

supervision: *"The defendant shall not associate in person, through mail, electronic mail, or*

*telephone with any individual with an affiliation to any organized crime groups, gangs or any*

*other criminal enterprise; nor shall the defendant frequent any establishment, or other locale*

where these groups may meet pursuant, but not limited to, a prohibition list provided by the

*Probation Department."* Specifically, Persico had contact with **Daniel Fama**, a member of the

Gambino crime family.


## **Charge Three:**

On or about December 1, 2025, Persico violated the following special condition of

supervision: *"The defendant shall not associate in person, through mail, electronic mail, or

telephone with any individual with an affiliation to any organized crime groups, gangs or any

other criminal enterprise; nor shall the defendant frequent any establishment, or other locale

where these groups may meet pursuant, but not limited to, a prohibition list provided by the

Probation Department."* Specifically, Persico had contact with **John Maggio**, **Thomas Scorcia**,

and **Michael Demiccio**, all members of the Colombo crime family.


## **Charge Four:**

On or about December 16, 2025, Persico violated the following special condition of

supervision: *"The defendant shall not associate in person, through mail, electronic mail, or

telephone with any individual with an affiliation to any organized crime groups, gangs or any

other criminal enterprise; nor shall the defendant frequent any establishment, or other locale

where these groups may meet pursuant, but not limited to, a prohibition list provided by the

Probation Department."* Specifically, Persico had contact with **Daniel Fama**, a member of the

Gambino crime family.

## Evidentiary Support:

The evidentiary support for Charges One through Four have been combined due to the relatedness of the charges. Additionally, the evidentiary support for the charges was provided by the Federal Bureau of Investigation (FBI).

In August 2025, the FBI received information that Persico met with Salvatore Fusco ("Fusco"), a member of the Colombo crime family's senior administration, outside New York University Langone Hospital in New York, New York ("NYU Langone").

The FBI then obtained and reviewed closed circuit television ("CCTV") footage maintained by NYU Langone. At approximately 1:45 p.m. on August 29, 2025, the videos depict Persico and Fusco arriving in separate vehicles and parking along 1st Avenue. Both men then greeted each other and walked together for approximately one hour around the exterior of NYU Langone. Following their meeting, they returned to Persico's vehicle where Persico retrieved his telephone. Both are then observed making a video call from Persico's telephone. Following their call, Persico's girlfriend arrived and greeted Fusco warmly. The government will argue that this meeting, which was conducted while walking outside a hospital, was designed so that law enforcement officers and Probation would be unaware of it and unable to monitor it.

Approximately one week later, on September 8, 2025, law enforcement conducted surveillance of Persico at his employment, Vintage Collision.[1] During their surveillance, law enforcement observed Gambino crime soldier Daniel Fama arrive with an unknown individual.

Fama greeted Persico, spoke outside with him, and then entered Vintage Collision alongside Persico.

On December 1, 2025, the FBI learned that Persico would be attending a Christmas Party in Brooklyn. That evening, FBI personnel conducted surveillance at Ponte Vecchio, a restaurant in Brooklyn, New York (the "Restaurant").[2] During their surveillance, FBI personnel observed a white truck registered to Vintage Collision as well as multiple vehicles registered to members of organized crime parked outside the restaurant. When FBI personnel attempted to enter the restaurant, they were advised by restaurant staff that the restaurant was closed for a private event. Shortly thereafter, the FBI obtained and reviewed CCTV footage and reservation records from the Restaurant. According to records obtained by the government, the Restaurant was reserved by Richard Cappa for a private party on December 1, 2025. The FBI understands that Cappa is a solider in the Colombo crime family.

A review of the footage obtained from the Restaurant's CCTV system depict Persico arriving to the restaurant at approximately 5:30 p.m. and dining with Angelo Spata. Spata is Persico's cousin and a Colombo crime family captain. During their meal, multiple members of the Colombo crime family arrive. Persico ignores these individuals while Spata greets them.[3] At one point, Persico is observed making a video call on his telephone.

Following their meal, at approximately 6:10 p.m., Spata and Persico walk to a rear outdoor area of the restaurant, leaving their telephones inside and ignoring the members of organized crime present in the restaurant as they walk by. Shortly thereafter, Spata reenters

the restaurant alone and brings the following three members of the Colombo crime family to Persico, who is still outside in the rear area of the restaurant:

- Colombo crime family captain John Maggio

- Colombo crime family soldier Thomas Scorcia

- Colombo crime family soldier Michael Demiccio

Before bringing the above individuals outside to meet Persico, Spata ensures that all three leave their telephones inside the restaurant. Outside, Persico warmly greets the above members of the Colombo crime family, embracing and kissing them. The five then meet for approximately 10 minutes. During their meeting, Persico meets separately with both Maggio and Spata while Demiccio and Scorcia are back inside the restaurant or out of earshot. This is consistent with the Colombo crime family's chain of command, as Persico, the boss, is meeting separately with the captains to discuss the issue raised involving Demiccio and Scorcia. Further, Persico and Spata deliberately ensuring that telephones were not present during their meeting is indicative of the sensitive, illegal nature of their discussion. Frequently concerned about law enforcement's ability to monitor telephones and other electronic devices, members of organized crime often meet without telephones present to discuss illegal activities. An image of the five meeting behind the restaurant is below:[4]

---

[1]     The government understands Persico secured Probation's approval for employment at Vintage Collision.

[2]     As with Vintage Collision, Ponte Vecchio was also frequented by Persico to meet with members of organized crime involved in the charged conduct in the Indictment.

[3]     The government will argue that Persico was aware of the presence of surveillance cameras and acted accordingly.



On Tuesday, December 16, 2025, and Wednesday, December 17, 2025, the FBI again conducted surveillance of Vintage Collision. On December 16, 2025, the FBI observed Persico at Vintage Collision. While Persico was inside, Gambino crime family soldier Daniel Fama, driving a car registered to a family member, arrived and entered Vintage Collision. On December 17, 2025, Persico was again observed at Vintage Collision by the FBI while a car registered to Fama was observed parked in front of the premises.



## Miscellaneous

Although the below information predates Persico's term of supervision, the conduct is relevant as it shows noncompliance while under BOP authority which continued into supervised release. The below information was provided by the FBI.

On May 7, 2025, Persico was released from the Federal Corrections Institute McDowell to the BOP's Halfway House. While not subject to supervised release conditions

when assigned to the Halfway House, Persico was subject to conditions administered by the BOP. These conditions included requiring prior BOP approval for any employment, driving privileges, and to refrain from associating with members and associates of organized crime.



Persico twice applied for driving privileges while at the Halfway House, both of which were denied.  Persico also applied for employment as a "General Manager" at Vintage Collision in Staten Island, New York, which was also denied by BOP personnel.  Notably, Persico worked at Vintage Collision during the timeframe he was charged with in the Indictment. Persico frequently met with members and associates at Vintage Collision to facilitate the criminal conduct detailed in the Indictment.  Following the denial of his employment request at Vintage Collision, Persico applied for and received permission to work at "Sun SI Auto Inc," which, as shown in an image below, shares a building with Vintage Collision:

On June 25, 2025, while FBI personnel were conducting surveillance, they

observed Persico depart the Halfway House. Persico was then observed walking to a nearby

parking garage, entering a white BMW registered to his girlfriend, and driving away in the

BMW. This conduct, as well as Persico's apparent employment at "Sun SI Auto Inc,"

occurred after Persico was denied both driving privileges and approval to work at Vintage

Collision on May 13, 2025, by the BOP.


## SENTENCING OPTIONS

## **Statutory Provisions**

### Charges #1 through #4:

Upon a finding of violation of supervised release, the Court may continue the offender on

supervised release with, or without, modifying or enlarging the conditions. The Court may also

extend the term of supervised release, if less than the maximum was already imposed, pursuant

to 18 U.S.C. 3583(e)(2). Alternatively, the Court may revoke supervised release and impose a

term of incarceration of up to two years on any such revocation, pursuant to 18 U.S.C.

3583(e)(3), without regard to any term of imprisonment imposed on prior revocations.

The Court may also order a new term of supervised release to follow. 18 U.S.C. 3583(h).

The new term of supervised release following a violation can be up to the maximum term of

supervised release that was authorized at the original sentencing, which in this case is three (3)

years', minus any custody ordered on a prior and the current violation(s). United States v.

Rodriguez, 2014 WL 7331947 (2d Cir. Dec. 24, 2014).

(Maximum period of TSR available at the original sentencing minus custody on the instant violation minus custody imposed on prior revocations of the supervision term resulting from the instant offense.

## Guideline Provisions

**Charges #1 through #4:**

The U.S. Sentencing Commission has issued policy statements for revocation of supervised release. These policy statements are advisory and non-binding on the Court. U.S. v. Anderson, 15 F.3d 278, 285-86 (2d Cir. 1994). Pursuant to U.S.S.G. 7C1.3(b), (amended November 1, 2025), upon a finding of a violation for which revocation is required by statute (see 18 U.S.C. § 3583(g)), the Court shall revoke supervised release. Upon a finding of any other violation, the Court should conduct an individualized assessment, taking into consideration the grade of the violation, to determine whether to revoke supervised release. Revocation is generally appropriate for a Grade A violation, often appropriate for a Grade B violation, and may be appropriate for a Grade C violation.

Pursuant to Application Note 2 of U.S.S.G. 7C1.3, upon a report of non-compliance or finding of a violation, the Court may take any appropriate action provided under 18 U.S.C. § 3583, which includes extension, modification, revocation, or termination of supervised release. If revocation is not statutorily required, the Court may also consider an informal response, such as issuing a warning while maintaining supervised release without modification, continuing the violation hearing to provide the defendant time to come into compliance, or directing the defendant to additional resources needed to come into compliance.

The defendant is charged with a grade "C" violation as defined by U.S.S.G. 7C1.1(a)(3). Since a criminal history category of III was found applicable at the original sentencing, the custody term for the violation should be 5-11 months per U.S.S.G. 7C1.5.

Pursuant U.S.S.G. 7C1.4(a), in the case of a revocation of supervised release, the Court shall conduct an individualized assessment to determine the appropriate length of the term of imprisonment, given the recommended range of imprisonment set forth in U.S.S.G. 7C1.5 (Term of Imprisonment—Supervised Release (Policy Statement)). Under U.S.S.G. 7C1.4(c), if supervised release is revoked, the Court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. (See 18 U.S.C. § 3583(h)).



███████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

## CLOSING & SIGNATURE

RESPECTFULLY SUBMITTED:

ROBERT L. CAPERS

CHIEF U.S. PROBATION OFFICER

